FIRST NATIONAL BANK OF HASTINGS V. FARMERS & MERCHANTS BANK ET AL.

FILED SEPTEMBER 23, 1898. No. 7685.

1. **Negotiable Instruments: INDORSEMENTS.** An indorser of a negotiable instrument guaranties the genuineness of prior indorsements.

2. ——: ——: FORGERY: ESTOPPEL. Accordingly, where a check is drawn payable to the order of a named payee, one who takes the check on the forged indorsement of the payee and himself indorses it, is liable to the bank on which the check is drawn if that bank pays it in ignorance of the forgery, in the absence of circumstances estopping the drawer from setting up the forgery.

3. ——: ——: ——: EVIDENCE. There was presented to a trust company by its local correspondent an application for a loan, offering certain land as security. The application was signed "B.," and an abstract also tendered showed title in B. The loan having been accepted, a bond and mortgage were tendered purporting to be executed by B. The company sent to the correspondent a check payable to the order of B. This check was presented to a bank bearing the indorsement "B." and also the indorsement of the correspondent. The bank paid the check to the correspondent and itself indorsed it, and the bank on which it was drawn paid it. B. did not own the land, and the abstract was false and forged. *Held*, (1) That if the application was made and the bond and mortgage executed by a third person, and that person indorsed the check, the indorsement was genuine, whether or not his real name was B., and although he did not own the land; (2) if the correspondent himself signed the application, bond, and mortgage, and indorsed the check, the indorsement was a forgery.

4. ——: ——: ——: ——. Evidence examined, and *held* not to sustain a finding that the indorsement was genuine.

5. **Principal and Agent: Agent's Authority: Estoppel.** A principal is not estopped to deny the authority of his agent to perform a particular act, on the ground that it was within the agent's apparent authority, unless the authority to perform it was apparent to the person dealing with the agent, and by him relied on.

6. ———: ———. Evidence examined, and *held* not to show apparent authority in the correspondent to receive the money on the check.

7. **Custom: Pleading and Proof.** A custom, special to a particular class of business operations, to be availed of, must be pleaded, and, if put in issue, proved.

Error from the district court of Platte county. Tried below before Sullivan, J. *Reversed.*

*J. B. Cessna, J. A. Casto,* and *A. M. Post,* for plaintiff in error.

*T. J. Mahoney, Mahoney, Minahan & Smyth, McAllister & Cornelius,* and *Lake, Hamilton & Maxwell, contra.*

Irvine, C.

In 1892 one A. M. Swartzendruver lived in Columbus and occupied certain relations with the Nebraska Loan & Trust Company of Hastings. The precise character of these relations is one of the questions in controversy, but it suffices for present purposes to say that he had authority to receive and transmit to the trust company applications for loans on real estate security, and bonds and mortgages securing such loans, and, in some cases at least, to deliver the instruments transmitting the money to the borrower. He transmitted to the company an application for a loan, purporting to be made by one John Baughman, and offering certain described land in Platte county as security. An abstract was also sent purporting to be made by Becher, Jaeggi & Co., and showing title in Baughman clear of incumbrance. The loan was accepted by the company and Swartzendruver transmitted to it a bond and mortgage, the bond purporting to be executed by Baughman and the mortgage by Baughman and wife. The signatures were in each in-

stance by a mark. The loan company sent to Swartzendruver its check on the First National Bank of Hastings for $1,136, the net amount of the loan, the check being drawn payable to the order of John Baughman. Swartzendruver presented this check to the Farmers & Merchants Bank of Platte Center, indorsed as follows: "John

x Baughman. Witness: A. M. Swartzendruver. A. M.

Swartzendruver." The bank paid him the amount of the check, and, having indorsed it, sent it to the United States National Bank of Omaha, which in turn indorsed it and sent it to the First National Bank of Hastings, which paid it. The trust company afterwards discovering that, as it supposed, the indorsement of Baughman was forged, the Hastings bank credited back to the trust company its amount, and brought suit against the Platte Center and the Omaha banks on their respective indorsements. Among the facts clearly established are that the land described in the mortgage did not and never did belong to Baughman, that the abstract was forged, and that the certificate of recording of the mortgage was also forged.

A large portion of the voluminous briefs is devoted to a discussion of the law with reference to negotiable instruments drawn to the order of fictitious payees, and whether the fictitious character of the payee depends upon the non-existence of the person named or the drawer's knowledge of his non-existence. An examination of the instructions against which this argument is directed convinces us that they really conform to the plaintiff's theory of the law in this respect and that they are not open to adverse criticism. On this branch of the case the essential issue made was whether the Baughman indorsement was genuine or forged, not whether such a person as Baughman existed or did not exist. After stating the issues the court gave the following instructions:

"7. From the evidence it conclusively appears that the Loan & Trust Company on the 10th day of August, 1892,

had in its possession a bond for $1,200 and a mortgage to secure the same, covering real estate in Platte county, both of which instruments purported to have been exe- cuted by John Baughman; that the said Loan & Trust Company believed said Baughman was a real person; believed that he had executed the bond and mortgage aforesaid, and that in consequence thereof they were in- debted to him in the sum of $1,136; that they executed the check in question intending thereby to pay him such supposed indebtedness. It thus appears that the Loan & Trust Company, when it issued said check, intended it for a real person named John Baughman who it sup- posed had executed the bond and mortgage aforesaid. No other person, under these circumstances, could in- dorse said check, or without Baughman's true indorse- ment rightfully receive the money therein directed to be paid. Neither the defendants nor any other bank was authorized to pay or cash said check without the genuine indorsement thereon of the payee, the person for whom it was intended by the Loan & Trust Company. There- fore, if Baughman was a fictitious person, and his name indorsed on the check a mere forgery, the payment thereof by the Farmers & Merchants Bank was unauthor- ized, and it and its co-defendant must bear the result- ing loss.

"8. But if a person bearing the real or assumed name of John Baughman made to the Loan & Trust Company the application for a loan given in evidence, and exe- cuted the bond and mortgage aforesaid, and also indorsed his name upon the check in question before it was pre- sented for payment to the Farmers & Merchants Bank, then the payment of said check by said bank was author- ized and rightfully made, and the plaintiff cannot re- cover, even though Baughman did not own the land described in the mortgage and was unknown in this county, and either alone or in collusion with others, im- posed on and deceived the Loan & Trust Company with intent to cheat and defraud it.

"9. The Loan & Trust Company, however, did not intend that said check should be paid to Swartzendruver. Therefore if he forged the abstract, bond and mortgage and indorsement of the name of 'John $\overset{his}{\underset{mark}{x}}$ Baughman' on the check, payment thereof by the Farmers & Merchants Bank was unauthorized, and the plaintiff is entitled to a verdict in its favor."

By the seventh instruction the jury was told that, the trust company believing that John Baughman was a real person, and intending the check to be paid only to his order, no other person could indorse it, or, without Baughman's true indorsement, rightfully receive the money, and that the bank could not rightfully pay the money without his true indorsement. By the eighth it was in effect stated that if a person whose real or assumed name was Baughman had made the application and executed the bond and mortgage, and had indorsed the check, then the indorsement was genuine and the bank protected. The ninth was that the trust company did not intend Swartzendruver to be the payee, and if he indorsed the name of Baughman the indorsement would be a forgery. A little reflection, even without the aid of the many authorities cited, must show that this theory was sound. An indorser guaranties the genuineness of prior indorsements; and if the Baughman indorsement was not genuine the indorsing banks were liable, unless indeed the trust company was estopped to set up the forgery and the bank's repayment of the amount to the company was therefore voluntary—a question arising on another branch of the case. If some one other than Swartzendruver, or even some one in collusion with him, falsely pretended to own the land, executed the bond and mortgage and indorsed the check, the indorsement would not be forged, it would be by the person to whom the check was in terms payable. The false representation of ownership of the land, and the assumption of a false name would be merely steps in de-

frauding the company, but the crime would not be forgery. But if Swartzendruver himself had executed the previous papers and indorsed the check, the indorsement was a forgery. He was not the one intended as the payee nor was he described as such.

Examining the evidence with a view to this issue we are persuaded that it demanded a verdict for the plaintiff, and that the verdict rendered cannot be sustained. In this we assume, as the parties assumed by their method of trial, and as the district court charged, that the burden of proof was on the plaintiff. The plaintiff so clearly satisfied this burden that without countervailing evidence there was no room for a finding adverse to plaintiff. The plaintiff showed that the abstract was forged, that Baughman never owned the land and the real owner had no connection with the transaction. The application stated Baughman's address to be Columbus and the postmaster did not know of such a person's ever receiving mail there. Several residents of the neighborhood, believing themselves conversant with its habitués, never heard of Baughman. The application was entirely in Swartzendruver's handwriting. The signature of Baughman in each instance, and that of his wife on the mortgage, was by means of a mark, and in each instance was witnessed by Swartzendruver alone. The check was presented by Swartzendruver alone, and no one could point to any other person as having had connection with the unlawful operation. Swartzendruver received the money and soon after fled the country. The inference from these facts certainly is that he was the criminal. The presumption of innocence does not aid the defendants. A crime was proved. Swartzendruver was at least an accomplice. To avoid the conclusion of forgery by him it is necessary to presume without any proof that another crime was committed by another person. There should be some proof of this before even a doubt of Swartzendruver's sole guilt could reasonably arise. It is claimed that there is some proof arising from two facts:

First, the abstract was not in Swartzendruver's hand-writing; secondly, the certificate of acknowledgment of the mortgage showed that some person known to the notary to be Baughman, personally appeared and acknowledged it. Under the circumstances we cannot see that either fact has the slightest probative value. To present an abstract in Swartzendruver's handwriting would be an act of recklessness which would lead to the discovery of the fraud before its fruits could be plucked; while it would be an obvious manœuvre to procure an innocent person to copy such a paper and then use the copy. As to the certificate of acknowledgment it was Swartzendruver himself who as notary made the certificate. If he concocted the scheme and performed the other acts he would not hesitate to do this part. There is no sanctity about an official seal which makes it tell the truth when used by a dishonest man. To suppose without evidence that there was a guilty third person, and in face of strong proof of one crime, to avoid a finding thereof by presuming without evidence a different crime, is to reason irrationally. In criminal cases it is often said that the jury must not reason irrationally to create a doubt; that they must not resort to fanciful conjectures and absurd hypotheses having no bases in the evidence; that they must not doubt as jurors what they believe as men. If so, then in this, a civil case, where the plaintiff was only required to produce a preponderance of the evidence, the jury must not overthrow a strong presumptive case made by the proofs, by the unfounded assumption of a state of facts which there is no evidence to render even probable. The mind is irresistibly led to the conclusion that this transaction was a bold and systematic scheme of forgery, secretly devised and successfully carried out by Swartzendruver himself.

One of the defenses interposed, and sustained to a certain extent at least by special findings of the jury, was that Swartzendruver was the agent of the trust company, authorized or apparently authorized to indorse the check

or to procure its indorsement, and then to receive payment and see to the application of the proceeds; that the trust company is therefore estopped from saying that the indorsement was forged, and that the Hastings bank in repaying the money, did so voluntarily and was not legally damnified. The evidence does not sustain this theory. Swartzendruver was in a sense the agent of the company, although the latter saw fit to style him a "local correspondent." But his agency was limited in character. The company furnished him blanks and he secured applications for loans which he forwarded to the company. He also sent abstracts, and if the loan was accepted procured the execution of the securities and sent them to the company. The company then remitted the loan through him, drawing in each instance, so far as the evidence discloses, a check to the order of the borrower. A form of letter was used in this last remittance, apparently a printed form. In the Baughman case it was as follows: "We inclose for John Baughman our draft to close the loan as per statement." Then followed a statement of the account. Below this was a form beginning: "Close the loan with care. Remove all liens (if any) and pay all taxes due," followed by other instructions. In the Baughman letter, all following the statement of account was stricken out. The words could be read below the erasing lines, but this served only to emphasize the fact that in this case Swartzendruver was to do nothing but deliver the check to Baughman. Clearly he had no actual authority to indorse it, or to receive the money after a genuine indorsement. But it is claimed that the transmission of previous checks, with directions to remove liens and pay taxes, conferred an apparent authority which could not be here limited as against the bank by secret instructions. To make out such a case defendant's reliance on such apparent authority would be an essential element. Authority to procure the indorsement and receive the money in other cases would not imply authority to forge the indorsement in

this. If the previous indorsements were also forged, such acts would not bind the company in this case unless at least when it sent this check it knew of the prior crimes. The evidence is that it did not have such knowledge. Authority to see to the application of money might imply authority to procure a genuine indorsement, but it would not imply authority to indorse the name of a third person to whom the check was payable. The Platte Center Bank had paid two previous checks in a similar manner, and in one case Swartzendruver's instructions had been to pay prior liens. But if other elements of an estoppel existed that of defendant's reliance did not, as based on that transaction, because it is not shown that the bank relied on the instructions so given or that it even knew thereof. The apparent authority which will estop a principal to deny an agency must be an authority apparent to the one dealing with the agent, and by him relied on.

It is said that it is a matter of common knowledge that in such cases the correspondent is expected to procure payment of the check and discharge prior incumbrances from its proceeds, and that to do so he must either indorse the check or procure its indorsement. It is therefore claimed that apparent authority thereby existed, the fact of Swartzendruver's agency being known to the bank. If such a custom exists, it is peculiar to a single class of operations and is at variance with the tenor of the checks drawn in this case. The court certainly cannot take notice of such a custom and it was neither pleaded nor proved. Its legal effect, if it exists, cannot be now considered.

REVERSED AND REMANDED.

SULLIVAN, J., and RAGAN, C., not sitting.