OSBORN v. PEACE et al.

SAME v. EDAY REALTY CO. et al.

(District Court, E. D. New York. July 15, 1914.)

1. FRAUDULENT CONVEYANCES (§ 105*)—HUSBAND AND WIFE—PURCHASE BY HUSBAND—TITLE IN WIFE'S NAME.

A husband may not lawfully purchase property and place the title in the name of his wife, and then prevent licnors or judgment creditors of the wife from treating the property as hers in case she reconveys to him without consideration, she having used the property as her own in creating incumbrances, as provided by Real Property Law, N. Y. (Consol. Laws, c. 50) § 262, nor can the wife successfully transfer the property in equity belonging to her husband in order to prevent her creditors from collecting their debts, incurred through their reliance on her ownership, as provided by section 263.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 345; Dec. Dig. § 105.*]

2. TRUSTS (§ 81*)—PROPERTY PURCHASED BY HUSBAND—CONVEYANCE TO WIFE —ACCOUNTING.

Where a husband purchases property with his own funds and has the title conveyed to his wife, equity as between the parties may compel her to account to him for the proceeds.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 115–118; Dec. Dig. § 81.*]

3. FRAUDULENT CONVEYANCES (§ 44*)—CONVEYANCE BY WIFE TO HUSBAND— RIGHTS OF CREDITORS.

Where a husband, having purchased certain real property with his own funds, caused the title to be conveyed to his wife, and she reconveyed to him through a third person at a time when there was no creditor having a lien of any sort on the property, the conveyance was not voidable at the instance of her creditors, unless she had held herself out as the owner of the property, and made representations of ownership which would have made a transfer by her fraudulent.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 102–104; Dec. Dig. § 44.*]

4. PRINCIPAL AND AGENT (§ 156*)—REPRESENTATIONS OF AGENT—AUTHORITY.

Where a husband purchased certain real property, taking the title in the name of his wife, she was not bound by representations made by her brother, who was her agent to discount certain notes at a bank on which she was an indorser, that she was the owner of the property, in the absence of proof that the brother was authorized to make any representations, or that the bank had any right to rely thereon.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 583– 587; Dec. Dig. § 156.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. BANKRUPTCY (§ 175*)—TRANSFER BY BANKRUPT TO CORPORATION—RIGHTS OF CREDITORS.

Where persons who subsequently became stockholders of a corporation placed certain real property in the hands of a bankrupt and made it possible for her to deal with it as her own, and after money had been loaned to her, on the faith of her ownership such stockholders, through the use of the bankrupt as a dummy holder of title, procured a transfer of the property to the corporation for their own benefit, such transfer was fraudulent and subject to vacation at the instance of the bankrupt's trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 247, 248; Dec. Dig. § 175.*]

In Equity. Actions by Everett H. Osborn, as trustee in bankruptcy of the estate of Elizabeth Peace, bankrupt, against Peter M. Peace and others and against the Eday Realty Company and another. Judgment for complainant against the Realty Company, and dismissed as against the individual defendants.

Charles P. Hallock, of New York City, for plaintiff.

L. & J. Weinberger, of New York City, for defendants Peter M. Peace, Margaret Rendall, and Eday Realty Co.

Herman M. Schaap, of New York City, for defendant Elizabeth Peace.

CHATFIELD, District Judge. These actions grew out of the same general situation which preceded a petition in bankruptcy, filed by one Elizabeth Peace, on the 30th day of December, 1912, in this court. The plaintiff, Everett H. Osborn, was appointed trustee in bankruptcy of her estate on the 24th day of January, 1913, and one of the debts proved in the case was a judgment obtained by the Cosmopolitan Bank, for $5,301.15. This was the amount due upon a promissory note for $5,000, becoming due March 1, 1912. The action against the individual defendants is concerned with a piece of real estate known as No. 33 Stevens street, Astoria, Queens county, upon which was erected a dwelling house, and in which the bankrupt, Elizabeth Peace, and her husband, had been and are residing at the present time. The action against the Eday Realty Company is based on the sale of two four-story apartment houses on the north side of Kelly street, about 173 feet west of Intervale avenue, in the borough of the Bronx, a piece of land in New Jersey, consisting of about 13 acres, and a plot of land at Canarsie, Queens county. In the case of the Stevens street house above referred to, it appears that title was conveyed to Elizabeth Peace and Margaret Rendall by deed under date of June 16, 1897, recorded in Liber 1159 of Deeds, page 145, in the office of the clerk of Queens county.

It appears from the testimony that Mrs. Peace is the sister of the defendant Margaret Rendall, and wife of the defendant Peter Peace. Some time previous to the dates above named, John Rendall, who was in business in the city of New York as a plumber, undertook certain building operations in the city of New York, and acquired a plot of property for the purpose of erecting an apartment, which will be later referred to as the "Kenilworth." This John Rendall was the brother

of the two women above named, and enlisted their interest and that of John Peace in the building operation. Margaret Rendall has lived in this country for a number of years, and had saved considerable money from the proceeds of her own work. Peter Peace was a mason, and his wife, Elizabeth Peace, had no property of her own, but lived at home with her husband and one son. The moneys entering into the various transactions and into the purchase of the property taken in the name of Elizabeth Peace was earned by and came from the proceeds of the business of the husband, John Peace, or from the sister, Margaret Rendall. It seems that Peace had a partner in his business; and in order to avoid difficulties through partnership obligations, Peace turned all of his earnings over to his wife, or took whatever property he obtained in her name. So long as Peace was solvent there was, of course, no fraud in so doing. The house at 33 Stevens street was built under the direction of Peace, who furnished money to his wife to partially make the purchase. The bills were generally rendered to Peace, and everything was done in his name. He has continued to live in the house, treating the house as his own, but furnishing therein a home to Miss Rendall whenever she wished a place to stay. A mortgage placed thereon was used to furnish funds for the building. This mortgage is for $3,500, and the value of the property is considerably more than that, probably in the neighborhood of $8,500. Upon the 10th of May, 1912, Mr. and Mrs. Peace and Miss Rendall went to an attorney, and had executed and delivered to Miss Rendall a deed from Elizabeth Peace of her own one-half interest in the property. The deed was acknowledged on the day of its execution and recorded upon the following day, but was dated back to the 6th day of May, 1912; and Miss Rendall then executed a deed, also dated May 6, 1912, but acknowledged upon the 10th and recorded the following day, of a one-half interest in the property to Peter Peace.

It will be noticed that the note to the Cosmopolitan Bank became due upon March 1, 1912, and in the month of April of that year Peter Peace organized, with the approval and help of his wife, her sister and nephew, a corporation known as the Eday Realty Company. Upon the 17th of April, 1912, Elizabeth Peace transferred to the Eday Realty Company the property on Kelly street in the borough of the Bronx, New York, and also the New Jersey property and Canarsie lots which have been mentioned. These conveyances were all for a nominal consideration, and left Elizabeth Peace with no real estate in her own name.

It appears that the building operations of John Rendall in constructing the Kenilworth had exhausted the money which had been loaned to him by his sisters and his brother-in-law; and he had made numerous loans with the Cosmopolitan Bank, and also had other transactions with the Bronx Borough Bank, which will be referred to subsequently. The title to the Kenilworth was placed in the names of Elizabeth Peace and Margaret Rendall, and subsequently sold, the Kelly street property, the Jersey land, and the Canarsie lots being received as a part of the price and held in the name of Elizabeth Peace until the conveyance to the Eday Realty Company.

It will be seen from the list of stockholders and directors of the Eday Realty Company that it was formed for the benefit of the parties who had loaned money to John Rendall, and also for whose benefit, according to the testimony, title to the Kenilworth and to the other property had been taken in the name of Elizabeth Peace. John Rendall owed money to his sister and his brother-in-law throughout the entire period, and their only return therefor was the real estate which was put in Mrs. Peace's name. John Rendall conducted all of the transactions with the Cosmopolitan Bank, including that relating to the $5,000 note on which the judgment was taken against Mrs. Peace.

A long series of notes were put in evidence, bearing the name of the wife of John Rendall as maker, and the indorsement of John Rendall and Elizabeth Peace. The testimony shows that Rendall made the statement that his sister, Elizabeth Peace, owned $30,000 or $40,000 worth of real property, and was a woman of independent means. She indorsed the notes, knowing that he was intending to use them in his real estate transactions, and that she was doing so as an accommodation. There is no evidence, and it appears not to be the fact, that she had knowledge of the statements made by him to the bank. The notes were renewed or payments made on account, so that the last amount was the $5,000, on which judgment was entered.

Upon the sale of the property known as the Kenilworth, certain sums of money were realized which were handled and disposed of by John Rendall, who acted as attorney for his sisters; and under agreement with Rendall this money was taken by Dr. Becker, the president of the Cosmopolitan Bank, and used in part to pay obligations of Rendall in the Bronx Bank. This amount was more than sufficient to have paid the claim against Margaret Peace in the Cosmopolitan Bank. John Rendall then went into bankruptcy, and nothing having been received from his estate, suit was brought against the indorser, Mrs. Peace, by the Cosmopolitan Bank, and resulted in the judgment which has been referred to.

With reference to the Stevens street property, the trustee in bankruptcy, having the same standing as a judgment creditor, charges that the trust created by taking the property in the name of Mrs. Peace was void; that John Peace, while really the party purchasing the property, did not preserve any valid claim thereto as against creditors of Mrs. Peace; that even in equity, Peace could claim no trust except to have his wife account for the proceeds of the property; that the transfer of the one-half interest to Miss Rendall and back to Peace was but another step to cover up the real situation; and that the whole transaction was fraudulent so far as bona fide creditors of Mrs. Peace were concerned, or so far as innocent parties relying upon the bona fides of the transaction subsequent to the taking of title to the property in the name of Mrs. Peace.

[1] It is evident that Peace could not purchase property and place the same in his wife's name, and then prevent lienors or judgment creditors of his wife from treating the property as hers, in case she deeded it back without consideration, if she had used the property as her own in creating the incumbrance. Real Property Law, section 262

of chapter 52, Laws of 1909. Nor could Mrs. Peace transfer the property, which was in reality that of her husband, in order merely to prevent her creditors from collecting their debts if she had incurred those debts through reliance upon her ownership, if this was known or ought to have been known by her. Real Property Law, section 263 of chapter 52, Laws of 1909.

[2] As between Peace and his wife, equity might compel her to account to him for the proceeds; but the real questions at issue in this case are whether Mrs. Peace's creditors can charge fraud because of what she allowed to happen or should have known, even if the transaction was otherwise an innocent one throughout, and whether the whole transaction was impregnated with fraud.

The testimony seems to entirely bear out the various propositions urged by the defendants with respect to the method of acquiring the actual interest of the parties in the Stevens street house.

[3] While the deeds from Mrs. Peace to Miss Rendall and back to John Peace were evidently given for the purpose of transferring through an apparently innocent and independent party, a one-half share which really belonged to John Peace, and while it is evident that this was done so that it would be fraudulent if he was not entitled to receive the property, nevertheless it must be held that there was no creditor having a lien of any sort upon the property at the time the transfer was made. The beneficial interest in the property was his, and if his wife saw fit to deed it to him, she not only had a right to do so, but was fulfilling her legal duty; and unless she had held herself out as owner of the property and made representations which would have made a transfer by her fraudulent, she had a right to make the deed in question.

[4] The charge that the bank was misled by her, and that she held herself out as owner, is based upon the statements of her brother who was her agent in delivering the notes to the bank, to the effect that she was the owner of the real estate which was standing in her name. Inasmuch as there is no definite statement shown which would indicate that the brother was authorized to make any representations whatever, or that the bank had a right to rely upon his statements as the agent of his sister, it must be held that any charge of fraud could be made against John Rendall alone. The precaution of an affidavit or a written statement from Mrs. Peace was not required. The bank had the right to levy on the proceeds of the Kenilworth property to pay its note, and could apply it to the debts of John Rendall if paid over by him as agent. As to the properties transferred to the Eday Realty Company, the same question is raised as to the representations and statements by John Rendall to Dr. Becker, to show that Mrs. Peace was the actual owner of the property, or that she held herself out as the owner, so that it was fraud upon her creditors to transfer it for the benefit of the people who were beneficially interested.

[5] The Eday Realty Company has been conducted in such a way and with such entire disregard of the necessary legal forms of regular procedure that the parties have evidently acted in ignorance of the requirements of the law in all respects. It is apparent that the stockholders who considered themselves the owners of the corporation have

dealt with it as if it were their individual property. They also placed it in the hands of Mrs. Peace and made it possible for her to deal with it as her own. If in so doing she has prevented them from objecting to the collection of claims by Mrs. Peace's creditors, or if any liens had attached thereto, it would not be at all surprising; on the contrary, their carelessness was so great as to merit that result.

But with reference to the property transferred to the corporation, a different situation is presented than with respect to the Stevens street house. In the case of the Stevens street house, the money invested had not been lost, nor had creditors dealt with Mrs. Peace from any knowledge of the transaction itself. In the case of the Kenilworth and the purchase of the other property, the money was lost in the transaction of the very operations from which the stockholders of the corporation have attempted, through the use of Mrs. Peace as a dummy holder of title, to transfer to the corporation for their own benefit some part of the property it represented or investment made by them at the solicitations of their brother.

It would seem that, considering the statements of Mrs. Peace's agent, in borrowing money from the bank, it should be held that the transaction with the Eday Realty Company involved fraud, and that there is sufficient value to the properties transferred to indicate that the parties who were thus using Mrs. Peace to hold their title to the real estate, intended to secrete that property from creditors who had extended credit, knowing that she was the ostensible owner of the property as to which the debt was incurred. In this case transfer of this property to the Eday Realty Company would be void as against creditors, and the proceeds should be accounted for to the trustee in bankruptcy. The action against the individuals should be dismissed.