No. 27,227.

THE KANSAS WHEAT GROWERS ASSOCIATION, *Appellee*, v. C. A. ROWAN, *Appellant*.

SYLLABUS BY THE COURT.

1. AGRICULTURE—*Renunciation of Associate Membership—Waiver by Acceptance of Membership Privileges—Breach of Marketing Agreement—Constitutional Law—Monopolies.* In an action by the Kansas Wheat Growers Association to recover the stipulated damages for breach of a marketing agreement, the record considered, and *held:* (a) A defense of fraud and misrepresentation in procuring the contract was unavailing because the contract was, by the acts of the defendant, ratified and acquiesced in; (b) the act under which the Kansas Wheat Growers Association is organized does not contravene the constitution of the United States or the constitution of the state of Kansas; (c) the contract entered into was not in violation of the antimonopoly law.

2. CONTRACTS—*Rescission—Laches.* Rule followed that one desirous of rescinding a contract must do so within a reasonable time.

3. SAME—*Generally.* Various alleged errors considered and held not to require a reversal.

Appeal from Sedgwick district court; J. EVERETT ALEXANDER, judge. Opinion filed March 12, 1927. Affirmed.

*E. L. Foulke, James B. Nash* and *Roy H. Wasson,* all of Wichita, for the appellant.

*T. A. Noftzger, George W. Cox, W. J. Masemore* and *R. L. NeSmith,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover the stipulated damages for breach of a marketing agreement and to enjoin the defendant from selling to any other than the plaintiff some 1,200 bushels of wheat. A defense that the agreement was procured through fraud

---

Agriculture, 2 C. J. p. 998 n. 31. Contracts, 13 C. J. p. 616 n. 1, 94, 99. Monopolies, 41 C. J. p. 166 n. 58, 59; 25 A. L. R. 1113; 33 A. L. R. 247; 19 R. C. L. 195.

and misrepresentation, that it was void because in violation of the antimonopoly law, that the act under which it was made was void because in contravention of the constitution of the United States and the constitution of the state of Kansas, was held unavailing, and defendant appeals.

The defendant made application to plaintiff for membership and signed plaintiff's marketing agreement December 20, 1921. They were accepted by the association at Wichita April 15, 1922. Because similar contracts made by plaintiff with its members have been discussed in other opinions, this one need not be set out at length. (See *Wheat Growers Association v. Schulte,* 113 Kan. 672, 216 Pac. 311; *Wheat Growers Association v. Floyd,* 116 Kan. 522, 222 Pac. 336; *Wheat Growers Association v. Ast,* 118 Kan. 247, 234 Pac. 963; *Wheat Growers Association v. Loehr,* 118 Kan. 248, 234 Pac. 962; *Wheat Growers Association v. Charlet,* 118 Kan. 765, 236 Pac. 657; *Wheat Growers Association v. Sedgwick County Commissioners,* 119 Kan. 877, 241 Pac. 466.) The contract here involved had the usual provisions, among others, that the association would buy and the grower would sell and deliver all of the wheat produced or acquired by him directly or indirectly, or that over which he had the legal right to exercise control, or that in which he had any interest during the terms of the contract; that in the event of a breach or threatened breach by him of any provision regarding delivery of wheat, the association would be entitled to an injunction to prevent such breach, and that if the association brought action by reason of a breach or threatened breach the grower would pay the association all costs of court, costs for bonds, expenses of travel, and all expenses arising out of or caused by the litigation, and any reasonable attorney's fees expended or incurred by it in such proceedings.

The defendant delivered wheat to the association under his contract in 1922, 1923, and on November 4, 1924, executed a proxy to C. O. Trower to represent him at all meetings of members of the association. He stresses the point that he was induced to sign the contract through fraud and misrepresentation. The chief misrepresentation claimed is that the agents for the Wheat Growers Association stated that it had obtained four or five million dollars from the War Finance Corporation to loan to the farmers who would join the association. Defendant testified that he was sick of having signed the agreement with the association within a week after he

had done so, and that it was not until November, 1923, that he sought to borrow money from the association.

The fact that he was sick of having signed his contract within a week after so doing indicated almost immediate discovery of something wrong in connection therewith. Whatever caused him to so regard his contract was undoubtedly sufficient to put him on inquiry concerning any misrepresentations that had been made to him. If he desired to rescind his contract, he should have done so immediately, or at least within a reasonable time. (*Cleaves v. Thompson,* 122 Kan. 43, 251 Pac. 429, and cases cited.) Instead of so doing, he delivered his wheat to the plaintiff under his contract the next year and the following year, and in 1924 exercised his rights as a member by authorizing his proxy to vote at all meetings and to assist in the association's dissolution. The misrepresentations concerning the War Finance Corporation became immaterial after the passing of two years—a sufficient ground in the beginning for rescission, or within a reasonable time, was not the basis therefor more than two years thereafter when defendant's acquiescence in plaintiff's program had become complete.

A jury, not asked to return a general verdict, returned special findings as follows:

"1. What number of bushels of wheat raised by the defendant during the years 1922, 1923 and 1924 do you find defendant delivered to other parties than the plaintiff? (Do not include amount defendant sold to wheat growers direct for seed purposes, if any.) A. 1,875 bushels.

"2. Do you find that defendant was induced to sign the contract with the plaintiff by fraudulent representations made by plaintiff's agent at the time he entered into said contract? A. Yes.

"3. If you answer question 2 in the affirmative, state what the false representations were. A. The agent's unqualified statement that the Kansas Wheat Growers Association had four or five million dollars for the purpose of financing members of the association and the omission of the full and detailed explanation as to the extent, limitations and requirements of members to obtain money from said association.

"4. What do you find to be a reasonable attorney's fee for the services of plaintiff's attorneys in this action? A. $200."

Thereafter the court made findings of fact and conclusions of law as follows:

"1. The court approves finding No. 1 of the special verdict of the jury, and finds that the number of bushels of wheat raised by the defendant during the years 1922, 1923 and 1924 and delivered to other parties than the plaintiff was 1,875 bushels.

"2. The court rejects finding No. 2 and finding No. 3 of the special verdict of the jury, for the reason that the representation found to have been made was, if made, immaterial, it appearing by the preponderance of the evidence that the plaintiff was, at the time of the making of the contract with defendant, and at all times subsequent thereto, provided with money or credit sufficient to enable it to carry out the terms of its written contract in respect to financing the defendant.

"3. The court approves finding No. 4 of the special verdict of the jury, and finds that a reasonable attorney's fee for plaintiff's attorneys is $200.

"4. The court further finds that after defendant learned the truth in respect to the representations by which he claims to have been fraudulently induced to contract with the plaintiff, he, by his conduct, elected to affirm said contract.

CONCLUSIONS OF LAW.

"1. The court concludes that the plaintiff is entitled to recover from the defendant an amount equal to 25 cents per bushel on 1,875 bushels of wheat and the costs of this action, including $200 attorney's fees.

"2. The plaintiff is entitled to a permanent injunction as prayed for in its petition."

It is contended that the action was one for damages pure and simple, and that the court erred in refusing a full jury trial. The only questions which could properly be submitted to a jury were submitted. The evidence showed and the jury found that the defendant had failed to deliver 1,875 bushels of wheat under his contract. The amount due plaintiff under this finding was a mere matter of computation. Therefore, the special finding of the jury was conclusive on the question of damages.

It is argued that the defendant was entitled to the verdict of a jury on the question as to whether or not the contract was induced by false and fraudulent representations. The jury having heard the evidence, detailed the fraud in such manner that the court was not bound to accept the jury's conclusion. The court properly applied the law to the findings made by the jury. Had the jury returned a general verdict for the defendant, it still would have been controlled by the jury's special findings and the court, as a matter of law, would have been compelled to enter judgment for the plaintiff. The same result was reached by the procedure which was followed.

A contention that the defendant was liable only for such wheat as he raised as landlord or lessor is not tenable. One provision of the contract bound the defendant as landlord and lessor; another, in whatever capacity he might raise, handle, or control wheat. He was bound by both provisions of the contract. He could not select and

fulfill only those to his liking. The point was considered in *Wheat Growers Association v. Ast,* supra, where it was said in the opinion:

"The court found that the member is a tenant farmer. It is not material whether he is owner or tenant of land. He is a wheat grower who is not living up to his marketing agreement with the association. In the light of results, it may not have been best for him to join the association, but no one has a higher interest in freedom to contract, and in the inviolability of a valid contract when made, than a tenant farmer of small means." (p. 248.)

Contention that the contract was void because in violation of the antimonopoly law; that the act under which it was executed was void because in contravention of the constitution of the United States and the constitution of the state of Kansas cannot be sustained, and need not be discussed at length. The same contentions have been heretofore held adversely to the contention now made by the defendant. In *Wheat Growers Association v. Charlet,* supra, it was held:

"The coöperative marketing act, under which the Kansas Wheat Growers Association is organized, does not contravene the constitution of the United States or the constitution of the state of Kansas, and the association is not a combination in restraint of trade or an organization for creation of monopoly." (Syl. See, also, *Coöperative Ass'n v. Jones,* 185 N. C. 265, 33 A. L. R. 231; also, notes and cases cited, 25 A. L. R. 1113; 33 A. L. R. 247.)

Various other alleged errors have been considered, but we find none which would warrant a reversal.

The judgment is affirmed.