No. 27,982.

THE KANSAS WHEAT GROWERS ASSOCIATION, *Appellant,* v. J. C. ROWAN, *Appellee.*

(266 Pac. 101.)

SYLLABUS BY THE COURT.

1. CORPORATIONS—*Scope of Corporate Power—Notice of Persons Dealing With Corporation.* Every person dealing with a corporation is bound to take notice of the power possessed by such corporation and of the purposes for which it was created. (*Scott v. Bankers' Union,* 73 Kan. 575, 85 Pac. 604.)

2. AGRICULTURE — *Marketing Agreement — Fraudulent Representations Outside Scope of Corporate Authority Cannot Be Relied on as Defense.* In an action by a wheat growers' association to recover from one of its members for failure to deliver wheat to the association in accordance with his contract, the record considered, and *held,* that the member who had signed a written application for membership, stating that "he had read the articles of incorporation, by-laws, original association agreement and standard marketing agreement of the association, that he understands and approves them and accepts them as binding upon him in all their terms," is bound to take notice of the limitations of the corporation's powers, and that it was not within its powers to loan him money to liquidate preëxisting indebtedness.

Appeal from Sumner district court; OLIVER P. FULLER, judge. Opinion filed April 7, 1928. Reversed.

*T. A. Noftzger, George W. Cox, W. J. Masemore, J. L. Weigand,* all of Wichita, and *Ed. T. Hackney,* of Wellington, for the appellant.

*E. L. Foulke, James B. Nash* and *Roy H. Wasson,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover damages for breach of a marketing agreement and to enjoin the defendant from disposing of wheat then on hand. The defense was that the contract had been procured through the fraudulent representations of plaintiff's agent. The defendant prevailed, and plaintiff appeals.

The representations of which the defendant complained consisted of statements by plaintiff's agent, William Leslie, that the plaintiff had money, borrowed from the War Finance Corporation, for the purpose of loaning it to its members to pay their debts, and the promise that if the defendant became a member of plaintiff association, it would loan him money at the rate of six per cent to pay

Agency, 2 C. J. p. 562 n. 81. Corporations, 14 C. J. p. 845 n. 2; 14a C. J. p. 251 n. 96; 7 R. C. L. 531.

debts on which he was then paying interest at the rate of eight per cent. That is to say, the real basis of defendant's claim of fraud was the promise that if he became a member of the association, it would loan him money to pay his debts. The plaintiff contends that the defendant was bound to know that such a promise was not within the scope of the plaintiff's powers as a corporation.

The defendant contends that Leslie was hired for the purpose of getting members for the association; that he was acting within the scope of his employment, and that the association is therefore liable for his acts.

The defendant's application for membership in the association reads:

"The undersigned wheat grower hereby applies for membership in the Kansas Wheat Growers Association. The undersigned states that he has read the articles of incorporation, by-laws, original association agreement and standard marketing agreement of the association, and that he understands and approves them and accepts them as binding upon him in all their terms. The undersigned agrees to perform all of the obligations of the by-laws and marketing agreement.

"Dated at Anness, Kan., December 28, 1921."

The purposes of the association set forth in the charter and referred to in its by-laws, read:

"(a) To promote, foster and encourage the business of marketing wheat coöperatively; to minimize speculation and waste in the production and marketing of wheat and wheat products; to stabilize wheat markets; to handle coöperatively and collectively the problem of wheat growers.

"(b) To engage in any activity in connection with the harvesting, grading, handling, processing, storing, shipping, warehousing and marketing of wheat or wheat products of the association and of its members and in the financing of any of said operations.

"(c) To purchase and sell any wheat or wheat products of its members and to purchase and to sell to its members machinery, equipment or supplies used in any of the above-mentioned activities, either by the association or by the members thereof.

"(d) And to do each and everything necessary, suitable or proper, in the judgment of the directors of this association anywhere throughout the world, for the accomplishment of any of the purposes or attainment of any one or more of the objects herein enumerated, or which shall at any time appear conducive to or expedient for the interests or benefit of this association and the members thereof, and to contract accordingly."

The law under which the plaintiff was organized (R. S. 17-1601 *et seq.*) specifically enumerates its powers. By no reasonable interpretation thereof can the association be construed to have the right to loan money to its members for the purpose of liquidating pre-

vious or existing indebtedness. The plaintiff is by the statute (R. S. 17-1604) expressly prohibited from engaging in the banking business.

In 14a C. J. 251 the rule is stated that—

"Every person dealing with a corporation is bound to take notice of the limits of its powers as imposed by its charter or governing statute."

In *Scott v. Bankers' Union*, 73 Kan. 575, 85 Pac. 604, this court said:

"Every person dealing with a corporation or with its obligations is bound to take notice of the power possessed by such corporation and of the purpose for which it was created." (Syl. ¶ 2.)

"Whether a given corporation has such power or not will depend upon the express provisions of its charter and the purpose it was intended to accomplish." (p. 586.)

In *Attleboro Steam and Electric Co. v. Narragansett Electric Lighting Co.*, 295 Fed. 895, it was held:

"One who deals with a corporation, whether he be a citizen of the same or another state, is chargeable with knowledge of the corporate power." (Syl. ¶ 1.)

In *Citizens' & Marine Bank v. Mason*, 2 F. (2d) 352, the court said:

"Persons are charged with knowledge of limitations and restrictions contained in the duly recorded charters of corporations with which they deal." (Syl. ¶ 1.)

The plaintiff, of course, denied that its agent made such representations or promises claimed by the defendant, but the jury by its verdict found as a fact that he did. It must, therefore, be treated as a fact in the case. We are of opinion, however, that the defendant had no right to rely on a promise made by the plaintiff which it did not put in the contract and which plainly was *ultra vires*. He was bound to take notice that the promise was beyond the plaintiff's powers. The defendant's application was an offer from him to the plaintiff association to become a member according to the terms of the agreement. In it he stated that he had read the articles of incorporation, by-laws and the marketing agreement, and that he understood and approved them. Such being the case, his statement that he believed the misrepresentations about the War Finance Corporation is not reasonable. Before he had a right to rely on the representations, he must have had a legally adequate reason to believe that the agent was authorized to make them.

"As a general rule, every person who undertakes to deal with an alleged

agent is by the mere fact of the agency put upon inquiry, and must discover at his peril that it is in its nature and extent sufficient to permit the agent to do the proposed act and that its source can be traced to the will of the alleged principal, particularly where he is dealing with an agent whose authority he knows to be special, or where it is his first transaction with the agent." (2 C. J. 562.)

The defendant and Leslie were strangers. The latter presented to the defendant a blank application and blank contract and solicited the defendant to sign them in order that they might be presented to the plaintiff for its approval and acceptance. It appears that defendant's application was not accepted until approximately four months thereafter. We are of opinion the defendant had no right to assume that Leslie had the authority now claimed for him. (See *Wilcox v. Eadie*, 65 Kan. 459, 463, 70 Pac. 338; *Sullivant v. Jahren*, 71 Kan. 127, 79 Pac. 1071; *Schimmelpennich et al. v. Bayard et al.*, 26 U. S. 264, 7 L. Ed. 138; *Texas Co. v. Quelquejeu*, 263 Fed. 491; *Jackson Paper Co. v. Commercial Bank*, 199 Ill. 151, 65 N. E. 136, 93 Am. St. Rep. 114; *Maryland Casualty Co. v. City of Cincinnati*, 291 Fed. 825; *Osborn v. Peace*, 215 Fed. 181; *Pierce v. Fioretti*, 140 Ark. 306, 215 S. W. 646; *Gibson v. Trow*, 105 Wis. 288, 81 N. W. 411; *First Nat. Bank of Hastings v. Farmers & Merchants Bank*, 56 Neb. 149, 76 N. W. 430; Meachem, Law of Agency, § 289.)

The defendant must be held to have known that the written provisions of the contract (which according to his application he had read) were of more force and virtue than the claimed oral representations and promises in contradiction thereto. In *Brown v. Trust Co.*, 71 Kan. 134, 80 Pac. 37, it was said:

"Interpretation of an unambiguous written contract is a matter of law for the court, and such a contract, when completed, is supposed to embody all prior understandings and negotiations, and is not to be enlarged, varied or contradicted by parol testimony." (Syl. ¶ 1.)

As noted, the agreement was signed on December 28, 1921. The defendant alleged that he delivered all of his wheat to the association the following year, 1922. Thus for a year, the defendant dealt with the plaintiff according to the terms of his agreement. During that time he had ample opportunity to learn that the plaintiff would not and did not loan money to its members at any rate of interest, and that it was not permitted to do so by its charter and the statute under which it was organized. In *Donaldson v. Jacobitz*, 67 Kan. 244, 72 Pac. 846, the court said:

"The fraud is deemed to have been discovered whenever in the exercise of reasonable diligence it might have been discovered, and in such a case reasonable diligence required an examination of the record, which would necessarily have disclosed the fraud alleged." (Syl. See, also, *Black v. Black,* 64 Kan. 689, 68 Pac. 662; *Hutto v. Knowlton,* 82 Kan. 445, 108 Pac. 825; *Sell v. Compton,* 91 Kan. 151, 154, 136 Pac. 927.)

Some of the authorities cited and relied upon by the defendant are 14*a* C. J. 765, 769, 775; 7 R. C. L. 647, 682. In 14*a* C. J. 775 it is said:

". . . A fraud perpetrated by an agent on a third person in the course of the agent's employment and for the benefit of the corporation must be imputed to it, whether or not the corporation had attempted to authorize the fraud or had actual knowledge thereof, or concurred therein, but the agent or employee must have been acting within the scope of his employment. Where a contract is procured on behalf of a corporation by its agent through fraud, the corporation makes itself answerable for the fraud by adopting the contract with knowledge, since by so adopting the contract it necessarily adopts the means by which it was procured."

The statement in the text just quoted does not, in our opinion, apply to the situation before us. The statements and promises credited to the agent were so totally and obviously opposed to the purposes and powers of the plaintiff association with which defendant was familiar that he must be held to have known that they had no substantial basis in fact.

The court instructed the jury on the defendant's theory of the case, and to the effect that "if it found that the agent Leslie fraudulently represented that the association had made arrangements for sufficient money to finance the wheat farmers who became members of the association, and that if he became a member thereof it would loan him money at six per cent to liquidate his indebtedness to the local bankers, etc.; that the defendant believed the statements made by Leslie and relied thereon; that he would not have become a member of the association had such statements not been made; that defendant was in need of money for the purpose of relieving his obligations at the local bank; and that if the jury so found it should return a verdict for the defendant, canceling his contract and relieving him from the liability thereunder." We think this was error. Under the admitted facts, we are of opinion the court should have directed a verdict for plaintiff for the agreed amount. For various questions heretofore considered and passed on in other wheat-grower cases, see *Wheat Growers Ass'n v. Rowan,* 123 Kan. 169, 254 Pac.

326, and cases cited; *Wheat Growers Ass'n v. Oden*, 124 Kan. 179, 257 Pac. 975; *Wheat Growers Ass'n v. Lucas*, 124 Kan. 773, 262 Pac. 551. It was agreed that if the plaintiff was entitled to recover, the amount of recovery should be $350 with interest at six per cent from June 26, 1924.

It was agreed between the parties on the trial that $100 was a reasonable attorney's fee for the plaintiff in the event it prevailed in the action.

The judgment is reversed and the cause remanded with instructions to enter judgment for the plaintiff for the agreed amounts.