No. 29,045.

THE KANSAS WHEAT GROWERS ASSOCIATION, *Appellant*, v. FRED WINDHORST, *Appellee.*

(283 Pac. 638.)

Opinion filed January 11, 1930.

*T. A. Noftzger, George W. Cox, Lawrence Weigand,* all of Wichita, and *W. E. Broadie,* of Kinsley, for the appellant.

*A. L. Moffat,* of Kinsley, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action by the Kansas Wheat Growers Association against one of its members to recover the prescribed penalty of twenty-five cents per bushel for wheat which he has failed to deliver to the association as required by his contract. The answer admits the execution of the contract, but denies that the conditions precedent to make it effective have ever been complied with and that it ever became a binding contract. The answer specially denies that the preorganization committee ever obtained preorganization contracts covering five million bushels of wheat based on the 1921 crop estimates, as the contract required before it would become effective and binding, and denies that the preorganization committee ever made a written statement signed by its chairman to that effect as was required, and alleges that if any such statement was ever made or such conclusion reached by the preorganization committee it was not made in good faith or upon a fair and reasonable calculation, but was willfully and fraudulently made for the purpose of illegally organizing the association for the fraudulent and dishonest purpose of collecting such penalties, and further alleges that he had no knowledge or notice of the fraud practiced upon him, and denies that he ratified or affirmed the contract or waived any of his rights for the reason that he acted in reliance upon the management and in the mistaken belief that the contract

had become effective. To this the plaintiff replied denying generally all allegations contained in the answer and especially those of fraud, and plead ratification and estoppel because of defendant's being a member of the preorganization committee and later a director in the association for the first two years, and had accepted and received benefits from the association under his contract. The jury rendered a verdict in favor of the defendant and answered a number of special questions. After overruling motions to set aside some of the special findings and for a new trial, the court rendered judgment in favor of the defendant, from which the plaintiff appeals, assigning as errors the admission and exclusion of evidence, the giving and refusal to give certain instructions, and the refusal to set aside the special findings and grant a new trial.

There was no controversy in the testimony as to the failure of the defendant to deliver his wheat to the association for three successive years covered by the contract, so that if the contract is effective and binding the plaintiff would be entitled to recover the prescribed penalty. This contract was signed by the defendant on June 1, 1921, and gave the preorganization committee until September 1, 1921, to procure the prescribed membership measured by bushels raised in 1921. Below the signature on the contract was a blank for statement of acres in wheat in 1921 and number of bushels raised. Two of the provisions contained in the contract are as follows:

"Upon execution of contracts covering five million bushels of wheat of the 1921 crop, estimated, this agreement shall become effective and the organization committee shall proceed to organize the association."

"For all matters of production or signatures and for all statements of facts in connection herewith, the written statement of the organization committee, signed by its chairman, shall be absolutely conclusive, with or without notice to the subscriber."

On the trial the plaintiff introduced in evidence its "Exhibit 2" as follows:

"The organization committee of the Kansas Wheat Growers Association hereby states that contracts with the said association were executed covering five million bushels of wheat of the 1921 crop, estimated, before the organization of the association. W. F. McMichael, chairman."

The defendant introduced a number of original contracts from the files of the association showing alterations and changes in the number of acres in wheat in the year 1921; also in a few instances introduced the duplicate copy of the same kept by the farmer which

had not been changed. Some of the alterations were, making the figure "1" into "4," a "4" into "7," and in one instance adding a naught changing "66" to "660."

The following are some of the special findings of the jury:

"2. Do you find that the organization committee found that it had secured contracts with amendments thereto totaling an estimated production of five million bushels of wheat for the 1921 crop? A. No.

"3. Did W. H. McMichael as chairman of the organization sign a written statement to the effect that said committee had found that amended contracts had been signed for an estimated production of five million bushels of wheat of the 1921 crop? A. No.

"4. Did the organization committee at any time act fraudulently or in bad faith in the conduct of its business? A. Yes.

"5. If you answer question No. 4 in the affirmative, then state wherein they so acted. A. Either changing contracts or having knowledge that they were changed."

The appellant first insists that the statement of the preorganization committee signed by its chairman is final and conclusive in the absence of fraud, and that such evidence, together with the minutes of the committee of September 24, 1921, showing unanimous action on the subject by the committee, was uncontradicted and would justify a finding by the court in favor of the plaintiff notwithstanding the verdict and special findings. It is true this evidence was uncontradicted, but its value and weight as convincing evidence was greatly depreciated and lessened by the testimony of the secretary of the committee to the effect that he had never before seen the statement, and by the testimony of the chairman whose signature was on the statement to the effect that it was genuine, but that he had no recollection or knowledge of having signed it or having seen it before, could not recall when or where he signed it, or anything in connection with the statement or the signing of it. This very depreciating evidence, together with what further impression might have been drawn from the appearance of the paper itself, could reasonably have been regarded by the jury as sufficient to justify a total disregard of the instrument which was contemplated by the terms of the contract to have been an all-important document.

Appellant contends that the evidence introduced by defendant did not constitute fraud, that of course the law does not presume fraud, and there would have to be a showing that the decision by the committee of the contracts having reached the required amount of five million bushels, was made without any evidence, or knowingly and willfully made contrary to the evidence, and that the

changing or raising of the acres in the estimate on the contracts would not constitute fraud without the further showing as to who changed the contracts and when they were changed. There was no evidence as to who made the changes or when they were made, but they were made on the original contracts which had all the time since they were signed been in the hands of the preorganization committee and the association until they were brought into court for this trial. Witnesses recognized the contracts they had signed and told the number of acres stated therein when signed and given to the representative of the committee. We don't understand the rule to be that where a change is shown to have been made in a written instrument while it has been in the possession of two or more parties entitled to hold it, that it is necessary to identify and show which one of them physically made the change. It will make no difference which one made it.

"It is not essential that direct evidence of fraud be adduced; circumstantial evidence may be sufficient to establish it, or it may be proved by a combination of direct and circumstantial evidence. However, the facts and circumstances proved must clearly establish the inference of fraud." (27 C. J. 65.)

The same reasoning will apply to the time of making the change. There could be no purpose in making such changes after the organization had been effected.

After the introduction in evidence of the original contracts the court appointed a committee to compute the acreage and bushels indicated on them, and, applying the recognized average as to bushels, the total was slightly less than the required five million bushels. This includes 148 contracts which were separated by the auditing committee because they consisted of the original contract alone instead of the original and amendment together as the others were. Appellant insists that this is not a complete showing because the evidence shows there were 150 or 160 additional contracts that had been filed in courts or surrendered upon settlement, and by applying the rule of average as to acres and bushels to these and adding that amount to the total found by the committee appointed by the court, the grand total would slightly exceed the required five million bushels. Appellee, on the other hand, insists that the total found by the committee was inflated by the increased acreage on account of the changes said to have been made therein. The record does not show the total amount of the alleged changes. A large number of the contracts were submitted to the jurors for the pur-

pose of permitting them to inspect the number of acres at the foot of the contract, and there is no finding as to the increase, if any, by changes, and perhaps could not be anything definite along that line. The jury did, however, find that the organization committee acted fraudulently or in bad faith by "Either changing contracts or having knowledge that they were changed." So many apparent changes, and by way of an increased acreage, are in line with the natural anxiety to reach the desired goal to effect the organization. It is hard to conceive so important a matter as to requisite acres and bushels being manipulated and inflated without the knowledge of those charged with the responsibility of the organization. We think the jury had sufficient evidence in figures, facts and circumstances on which to base its finding on this subject.

We find no error in the exclusion of the testimony offered by plaintiff as to the yield of the crop of 1922 to reach the required limit, because the prescribed amount was specifically based on the yield of 1921, and if the limit was not attained when the organization was effected a crop many times greater in 1922 would not cure a shortage or defect at the time of the organization.

Appellant insists that appellee waived the performance of the condition precedent in his contract and was estopped from setting up nonperformance of the condition precedent and refers to the fact that he was a member of the preorganization committee of twenty-one members, and as a member was as much responsible as any other and had full and free access to the papers and records to know the amount of bushels subscribed, and detect any fraud or misconduct; also the fact that he participated in the organization of the association and was one of its directors for the first year or more and had delivered his wheat to the association for two years after its organization.

This case is very different from the cases of *Wheat Growers Ass'n v. Rowan*, 123 Kan. 169, 254 Pac. 326, and *Wheat Growers Ass'n v. Rowan*, 125 Kan. 710, 266 Pac. 101, cited by appellant, because in both of those cases the misrepresentations complained of related to the matter of members obtaining loans from the association. In the former case the member delivered his wheat to the association for two years and gave a voting proxy the fourth year after the organization, without complaining of the misrepresentation. In the latter case, where the member had dealt with the association for a year, during which time he had ample opportunity to learn that

the association was not making loans. These are very different circumstances from actual shortage of acreage and the discovery of fraud by inflating acreage, which matters are usually concealed and hidden.

In the case of *Cal. Raisin Growers' Assoc. v. Abbott*, 160 Cal. 601, a prerequisite escrow provision was alleged to have been violated and disregarded, and the court in holding that the member had waived that part of the agreement by delivering his products to the association coupled it with the statement that under the California statute such a condition precedent was illegal and would not be tolerated.

Appellant urges that as a member the defendant, like a stockholder in a corporation, recognizes the existence of the corporation and accepts benefits thereunder, he thereby waives the right to question the compliance with conditions precedent and cites strong and well-recognized authorities, but we have failed to find any of them that do not make appropriate exceptions to the general rule where the member did not have knowledge of the failure of compliance or where there was fraud in connection with the organization.

In this case the appellee testified he had no knowledge either of the failure of compliance or of any fraudulent conduct prior to the bringing of this action. Appellant directs our attention to the record where defendant said he smelled there was something wrong in 1922 and wrote a letter concerning it. The letter and reply were later introduced and the comment was limited to the questions of price received for his wheat and the grading thereof—nothing concerning the serious matters involved in this action.

"A waiver may be express, or may be inferred from actions or conduct, but all the attendant facts, taken together, must amount to an intentional relinquishment of a known right, in order that a waiver may exist. Acts relied on as constituting a waiver must be inconsistent with an intention to insist on the rights of the party under the contract, and must contain the elements of an estoppel." (13 C. J. 671.)

"Acts in affirmance of the contract amount to a waiver of the fraud only where they are done with full knowledge of the fraud and of all material facts and with the intention clearly manifested of abiding by the contract and waiving all right to recover for the deception." (27 C. J. 23.)

Under the heading of estoppel in the same work, after enumerating the several relations under which estoppel can be invoked, which includes cases of this kind, the author states:

"On the other hand the rule has no application where the party against whom the estoppel is claimed acts in ignorance of his rights." (21 C. J. 1210.)

Of course, these rules and exceptions apply to stockholders or members of associations like the one at bar, but before there can be an effective waiver or estoppel the party must act with full knowledge of the situation or notice of such fraud or irregularities as would put him upon inquiry.

"As in the case of any other contract upon a condition precedent, a subscriber to the capital stock of a corporation upon a condition precedent may expressly or impliedly waive the condition or be estopped by his conduct from setting up nonperformance thereof to escape liability on his subscription or as a stockholder, unless the condition is imposed by charter or statute as an absolute condition precedent to the creation of the corporation; and as a rule there is such a waiver or estoppel if the subscriber acts in a manner which is inconsistent with an intention to insist on performance of the condition or which shows a willingness to be bound without such performance, as where, with knowledge of the fact that the condition has not been performed, he pays the amount of the subscription or any part thereof, or acts as a stockholder by participating in the organization of the corporation, in stockholders' meetings, in the conduct of its business, or otherwise." (14 C. J. 566.)

"Whether there has been a waiver is generally a question of fact, and the sufficiency of the evidence relating thereto is for the jury. The jury may be properly instructed as matter of law, that a waiver must be voluntary, and that it implies a knowledge of the right, claim, or thing waived; yet whether it was voluntary, and whether the party had knowledge of the right or thing waived, are still questions of fact to be submitted to the jury. Where, however, the facts and circumstances relating to the subject are admitted or clearly established, waiver becomes a question of law." (27 R. C. L. 912.)

The appellant relies on the last clause of the above quotation as applicable in this case. The trial court did not agree with appellant that its position was clearly established by uncontradicted evidence or admissions, and we concur with the trial court in this particular, and therefore cannot accept the appellant's theory of waiver and estoppel applicable to the evidence in this case as a question of law.

Appellant objects seriously to three of the instructions given by the court on the grounds heretofore considered in this opinion, and for the same reasons given above in connection with these three points, we find no error in the giving of these instructions.

Two matters of especial distinction deserve to be mentioned in conclusion. All the allegations and proof of fraud apply to the work of the preorganization committee rather than the resultant or-

ganization; and an important distinction between this case and many of the others heretofore brought by the same plaintiff is that in the earlier ones estoppel applies against alleged false promises while here it has been found that the contract itself was not binding.

The judgment is affirmed.

JOCHEMS, J., not participating.

DAWSON, J. (dissenting): I must dissent. As a member of the preorganization committee, defendant was as much responsible for its acts as any other person. The fact, if it be a fact, that he was merely one of a number of figureheads who pretended to serve on that committee, which juggled the figures, and not an active participant in so doing, should not let him out. If this were a criminal prosecution for fraud and conspiracy, defendant's plea of confession and avoidance would be unavailing. Defendant's acceptance of a place on the preorganization committee bound him to its acts since he did not object to its doings. He should not now be heard to say he shirked his duties as committeeman and let its leaders do as they pleased. The more significance that is given to the evidence offered in defendant's behalf the more imperatively the case calls for the application of the doctrine of estoppel against him. Men should not be allowed to escape the responsibilities of their *passive* acts which effectuate a fraud any more than their active acts which bring about the same result.