THE ATCHISON, TOPEKA & SANTA FE RAILWAY
COMPANY v. E. S. BENNETT.

No. 12,538.   (66 Pac. 1018.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury to Employee—Settlement and Satisfaction—Fraud.*   More than four months after the plaintiff below had suffered an actionable injury to his person by the negligence of the defendant company, he made full settlement therefor with the latter.   He was at the time in full possession of his faculties, and thought, from the favorable progress of his injuries in the past, that he would get well within a limited time.   Desiring the opinion of a physician on the matter before the settlement was made, he called on a doctor in the employ of the defendant company and asked him what he thought about his final recovery, and was told that he did not think his injury was permanent.   He knew of the relation between the doctor and the defendant.   It turned out that his injury was permanent, and he afterward sought to set aside the settlement and satisfaction, for fraud.   *Held*, that the evidence of fraud in the case was not sufficient, as matter of law, to accomplish this, and that an instruction to the jury to return a verdict for the defendant ought to have been given.

2. ——— *Opinion not a Basis for Fraud.*   The expression of an opinion, honestly entertained, as to a matter wherein opinions

may differ, does not afford ground to set aside a settlement and satisfaction on the ground that the same was obtained by fraud; and in this case, *held*, that the evidence shows that only an opinion was given.

Error from Cowley district court; W. T. McBRIDE, judge. Opinion filed December 7, 1901. Division two. Reversed.

*A. A. Hurd*, and *O. J. Wood*, for plaintiff in error.
*C. T. Atkinson*, and *J. E. Torrance*, for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J. : This was an action by the defendant in error to recover damages from the railway company for personal injuries received in its employ. He was head brakeman on a freight-train which had just pulled into the yards at Arkansas City. The air-brakes were negligently applied by a yardman at the rear of the train, and, in consequence of the sudden stopping of the train thereby, the plaintiff, who was standing on the front end of the train, was violently thrown to the ground and sustained a severe sprain of his ankles. The injury was had on the 8th day of December, 1896. He was attended by Doctor Dunning, the company's local surgeon at Arkansas City, for some little time, and became gradually better, so that he was able to get around, and thought he would eventually fully recover. On April 19, 1897, Mr. Smith, a claim agent of the railway company, went to Arkansas City to effect a settlement between the company and plaintiff for his injuries. Plaintiff wanted $1000 at first, but, after some negotiation, he finally agreed to accept $450. This amount was paid him, and he gave a re-

ceipt in full satisfaction of all claims and demands whatsoever growing out of the injuries received by him on December 8, 1896.

On October 7, 1898, he brought his action against the railway company to recover damages for his injuries. The company answered, setting up, among other things, the settlement and discharge which plaintiff had made. The latter replied that the discharge had been obtained through the fraud of the agents of the railway company. Upon the trial, after all the evidence was in, the railway company asked the court to instruct the jury to return a verdict in its favor, upon the theory that no sufficient evidence had been adduced to prove fraud in the procurement of the release from liability. The court refused so to instruct. In our opinion the instruction should have been given, and, while several errors are urged by plaintiff in error, we shall discuss only the sufficiency of the evidence to invalidate the discharge of liability, as that will dispose of the case.

It seems that Mr. Smith sent word to the plaintiff to meet him at the depot if he desired to make a settlement with the company, and that in pursuance of that notice the plaintiff did hunt up Mr. Smith, and the latter told him he was prepared to make settlement; that he had seen Doctor Dunning, and Doctor Dunning had said that plaintiff's injuries were not permanent. Plaintiff then told Smith that he would go and see the doctor, and see what he had to say. This he did, and plaintiff testified on direct examination as follows:

"When I went to the office I told him (Doctor Dunning) what I came for, and told him I was about to settle, and asked him what he thought about it; asked him if he thought I would be able to go to work in two months. He says, 'I don't see why you can't

now.' I says, 'You don't think my injuries are permanent?' He said: 'No, no, I don't think they are permanent; you will be all right.'"

Upon cross-examination, he said:

"I asked him what he thought of my foot, and asked him if he thought it was permanently injured. He said: 'Why, no, it is not a permanent injury; it will be all right in a short time.'"

At the time of this conversation and settlement the plaintiff believed from his own feelings, and from the favorable progress that had been made during the four months that had passed since his injury, that he would be well in two months more.

Doctor Dunning testified as follows:

"Mr. Bennett first came to me and said he was going to make a settlement with the railroad. I asked him why he made the settlement at that time; why he didn't defer the settlement until he was well or was better. And he remarked that he needed the money. He asked me the question, how long would he be disabled. I told him no one, no physician, could state definitely the length of time; might be longer or shorter."

He further testified on cross-examination that he did not know at the time of this conversation whether the plaintiff's injuries were permanent or not. The plaintiff denied that Doctor Dunning told him that no one could foretell the results of the sprain. Thereupon, acting upon all this information, a settlement was made. It was shown on the trial that the injuries were of a permanent character. Taken at its strongest, does all this show such fraud on the part of the officers or agents of the railway company as will invalidate this settlement and permit plaintiff to ignore it?

This settlement was made more than four months

Railway Co. v. Bennett.

after the injury.   Plaintiff at the time was in posses-
sion of all his faculties.   He had noted the progress
of the injury toward recovery.   It was his opinion
that he was not permanently injured.   He desired
the opinion of a medical man upon this subject, and
for this purpose he sought Doctor Dunning.   Doctor
Dunning did not seek him.   He knew the relation
which the doctor sustained to the company, yet, know-
ing this, he went to him for his opinion upon the matter.
In effect, he made Doctor Dunning his agent.   He was
free to go to any source of information, but he delib-
erately chose to take Doctor Dunning's opinion on the
matter.   It was an *opinion* that he sought.   In the
nature of the case it could be nothing more.   He
himself recognized this fact, and he testified that he
went to ask the doctor what he *thought* about his foot
and when he would be able to go to work.   It was
only an *opinion* as to the probability of his recovery
which the plaintiff sought and which the doctor gave.
Plaintiff well knew, or ought to have known, that no
physician could speak with certainty on this question;
yet knowing this, and after getting the doctor's opin-
ion, which coincided with the opinion which he him-
self had, he acted and made the settlement.   He
insists, however, that, inasmuch as the doctor told him
that his injuries were not permanent, when, as a mat-
ter of fact, he did not know whether they were per-
manent or not, this was such fraud as would enable
him to avoid this discharge and release.

We do not think that the evidence is sufficient to
bear out this contention.   It appears to us that Doc-
tor Dunning acted perfectly fair and open with the
plaintiff.   He suggested to him that it would be wise
for him to wait, but the plaintiff said he needed the
money; and it appears that soon after this he used a

50—63 KAN.

portion thereof in the purchase of a home. We think it quite apparent that both plaintiff and Doctor Dunning understood that plaintiff was asking, not for the expression of a fact, but for an opinion, a guess, and, in the giving of this guess, we see no evidence of any purpose on the doctor's part to mislead. The doctor said: "I do not think your injuries are permanent." Whether or not they were permanent no one could tell. While upon cross-examination the plaintiff says that the doctor said that his injury was not a permanent one, this answer must be read in the light of the question which elicited it, and, really, it is but the expression of what he then thought about it. The evidence in the case showed that the best the most skilled could do was to give an opinion, and we find in the entire case not the slightest evidence to sustain the contention that the opinion which Doctor Dunning then expressed was not honestly entertained by him.

It is too well settled to need the citation of authorities that one has no right to rely on the mere statement of an opinion, or to predicate fraud thereon, so as to avoid or rescind a contract entered into on the strength of such opinion, when such opinion is honestly entertained and given.

"False representations, to be fraudulent, must be a false statement of facts, positively made, not mere matters of erroneous opinions. A concealment, to afford ground of rescission for fraud, must be a wilful suppression of such facts in regard to the subject-matter of the contract as the party making it is bound to disclose." (1 Beach, Mod. Cont. § 799.)

"A concealment, to afford ground of rescission for fraud, must be a wilful suppression of such facts in regard to the subject-matter of the contract as the party making it is bound to disclose." (*Rison v. Newberry*, 90 Va. 522, 18 S. E. 916.)

The case of *Homuth v. Street Ry. Co.*, 129 Mo. 629, 31 S. W. 903, was an action for an injury of much the same character as the one in this case.   Plaintiff there sought to avoid a satisfaction of her damages by showing that a physician in the employ of the defendant, in answer to her question as to the extent of her injuries, told her she would be well in a short time.   The court in discussing the matter, on page 644, said :

"The question could not have called for more than an opinion from the surgeon as to the probable duration of her trouble, for plaintiff must have known as well as the surgeon that when an injury of that kind will become entirely well must depend upon many conditions more in the knowledge and control of plaintiff than that of the surgeon whose opinion is sought. Plaintiff must know that there are no fixed rules in surgery by which the day, week or month can be calculated for the recovery of an injury to a member of the body under any and all circumstances.   Constitutional infirmities, hidden maladies, unknown to physician or surgeon, special manner of treatment, the nervous temperament, the mental and physical idiosyncrasies of the patient, all constitute elements in the calculation ( or more properly said the guess) of time when a given injury by way of a strain, or injury of the kind received by Mrs. Homuth, will be entirely restored.   All that can be said by the physician is 'that all things being favorable, as I now understand the situation, it is my judgment that this or that injury will probably be well in one or two or three or more weeks or months.' "

In Railway Co. v. Goodholm, 61 Kan. 758, 60 Pac. 1066, it was said, on page 764 :

"It is true, as contended, that expressions of opinion or belief as to what will happen in the future, or of which knowledge in its strict sense cannot be had, are not fraudulent if made in good faith and with no intention to deceive." ( See, also, *Hayes v. East Tenn.*

*Railway Co.*, 89 Ga. 264, 15 S. E. 361; *Doty v. Chicago, St. Paul & Kansas City Ry. Co.*, 49 Minn. 499, 52 N. W. 135.)

To set aside the accord and satisfaction entered into by the plaintiff in this case for a good and valuable consideration, when he was in possession of all his faculties, when he was fully advised of the progress of his injury for more than four months, when he, from his experience and feelings, thought he would recover in due time, simply because the doctor in the employ of the railway company, whom the plaintiff voluntarily consulted knowing his relation to the company, honestly expressed an opinion coincident with his own, would be to disregard the rules of law, and hold as nothing the contracts of parties deliberately entered into; it would discourage, rather than encourage, the settlement of the differences of parties out of court.

The instruction to the jury to find for the defendant, on all the evidence, ought to have been given. The case will be reversed and remanded, with instructions to set aside the judgment entered, and to enter judgment for the plaintiff in error for its costs.

GREEN, POLLOCK, JJ., concurring.