No. 29,045.

THE KANSAS WHEAT GROWERS ASSOCIATION, *Appellant,*
v. FRED WINDHORST, *Appellee.*

(292 Pac. 777.)

Opinion on rehearing filed November 8, 1930. (For original opinion of affirmance, see 129 Kan. 528, 283 Pac. 638.)

*T. A. Noftzger, George W. Cox, Lawrence Weigand,* all of Wichita, *W. E. Broadie,* of Kinsley, *Robert Stone, James A. McClure, Robert L. Webb* and *Beryl R. Johnson,* all of Topeka, for the appellant.

*A. L. Moffat, John A. Etling,* both of Kinsley, and *R. L. Hazzard,* of Greensburg, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is a rehearing of a case in which the opinion

was handed down January 11, 1930 (*Kansas Wheat Growers Ass'n v. Windhorst*, 129 Kan. 528, 283 Pac. 638). The rehearing was granted as to two propositions only: estoppel of the defendant, and the defense of not having subscribers for the estimated five million bushels requisite for organization.

The action was commenced by the Kansas Wheat Growers Association against the defendant Fred Windhorst, one of its members, to recover the prescribed penalty of twenty-five cents per bushel for wheat which he has failed to deliver to the association as required by his contract.

The amended petition alleges that the plaintiff association was duly organized and existing under the coöperative marketing act, and sets up a full and complete copy of the preorganization contract signed by defendant and makes its provisions a part of the petition, and especially pleads the issuance of a written statement signed by the chairman of the organization committee showing compliance with the requirements for organization as to matters of production and signatures; and further alleges that defendant ratified and affirmed the contract and waived any informalities by his subsequent acts.

The answer admits the execution of the contract, but denies that the conditions precedent to make it effective have ever been complied with and that it ever became a binding contract. The answer specially denies that the preorganization committee ever obtained preorganization contracts covering five million bushels of wheat based on the 1921 crop estimates, as the contract required before it would become effective and binding, and denies that the preorganization committee ever made a written statement signed by its chairman to that effect as was required, and alleges that if any such statement was ever made or such conclusion reached by the preorganization committee it was not made in good faith or upon a fair and reasonable calculation, but was willfully and fraudulently made for the purpose of illegally organizing the association for the fraudulent and dishonest purpose of collecting such penalties, and defendant further alleges that he had no knowledge or notice of the fraud practiced upon him, and denies that he ratified or affirmed the contract or waived any of his rights, for the reason that he acted in reliance upon the management and in the mistaken belief that the contract had become effective.

Defendant further alleges:

"That the acts of said organization committee, its officers and agents, and the officers and agents of said proposed corporation, were not in good faith and were not based upon facts known to them, said acts being for the fraudulent purpose of organizing said association and obtaining a charter therefor and of making this defendant and others who had signed similar contracts believe that said contract had become binding upon him by its terms. . . . Defendant denies that he ratified and affirmed said contract or waived any informalities in its execution and alleges that any acts done by him under said contract were done in reliance upon and in the mistaken belief that said contract had become effective by its terms and without knowledge or notice of the fraud practiced upon him by said plaintiff, the organization committee, its officers, agents and representatives."

To this the plaintiff replied, denying generally all allegations contained in the answer and especially those of fraud, and plead ratification and estoppel because of defendant's being a member of the preorganization committee and later a director in the association for the first two years, and had accepted and received benefits from the association under his contract. The jury rendered a verdict in favor of the defendant and answered a number of special questions, four of which questions and answers are as follows:

"2. Do you find that the organization committee found that it had secured contracts with amendments thereto totaling an estimated production of five million bushels of wheat for the 1921 crop? A. No.

"3. Did W. H. McMichael as chairman of the organization [committee] sign a written statement to the effect that said committee had found that amended contracts had been signed for an estimated production of five million bushels of wheat of the 1921 crop? A. No.

"4. Did the organization committee at any time act fraudulently or in bad faith in the conduct of its business? A. Yes.

"5. If you answer question No. 4 in the affirmative, then state wherein they so acted. A. Either changing contracts or having knowledge that they were changed."

The judgment rendered in favor of the defendant by the trial court on the general verdict and the answers to special questions was affirmed by this court.

The conclusion reached by this court on the question of estoppel in the former opinion was based upon the undisputed testimony of the defendant that he had no knowledge or notice of any of the fraud now alleged by him prior to the commencement of this action, which was more than five years after the alleged fraudulent conduct occurred which resulted in the organization of the plaintiff association. The court was impressed, perhaps more forcibly than it should have been, with the fact of absolute want of knowledge on the part

of the defendant of any fraud, and may have underestimated the companion feature covered by the evidence and instructions and involved in the case, viz., what he as an ordinarily prudent man should have known under the circumstances.

In pursuing this feature of the case further than it was developed in the former hearing and opinion, it should be observed and noted that this defendant was named in the preorganization contract as one of the organization committee consisting of twenty-one members. His name appeared as such in all the other preorganization contracts signed by other subscribers. This is the committee to which he especially attributes and ascribes the fraudulent conduct in the organization of the association based upon altered and changed numbers of bushels and with which he charges bad faith in the preorganization matters intrusted to it and its members.

The evidence shows that the defendant accepted the position on this committee and acted as a member thereof from the very beginning throughout its existence and attended its meetings except that he was not present on the occasion when it is said to have approved the report of its subcommittee of three, declaring that all the prerequisites for the proposed organization had been met and then recommended the obtaining of a charter and completing the organization.

The evidence further shows that the defendant was one of the directors of the newly organized association and continued to serve as a director for the first two years of the existence of the association, and delivered his wheat pursuant to the contract for two or more years, then discontinued its delivery.

One of the duties of the organization committee as prescribed by the contract was to return to the various subscribers the unexpended balance of the membership fee advanced by each subscriber, in case the requisite number of bushels was not subscribed. The contract contained a provision that after organization the association shall be deemed to be acting in its own name for all the growers in any action or legal proceeding, under which provision it is claimed the present action is in effect one between the defendant and the many hundred other subscribers who were relying upon defendant to carefully guard their interests in preventing an illegal organization and return to them the unused balance of the membership fee if the requirements for organization were not fully and justly met. The main charge of fraud is directed against the or-

ganization committee, and the only finding of fraud made by the jury was against the organization committee. Defendant says he had no ground or reason whatever to suspect the committee or any member of it, and that he relied upon the members thereof absolutely and believed the statements and representations made to him by them, and therefore did not make any investigation as to the truth and accuracy of such statements.

Appellant insists that it is not sufficient for one assuming a position of responsibility wherein he is intrusted by others with the duty of seeing that their interests are protected and that the proposed association is not organized unless the prescribed prerequisites are fully met, to simply deputize a subcommittee to act for him and accept what they and other members of the committee say or report without satisfactory assurance or convincing proof.

Appellee urges that members of such a committee occupy a relation of trust and confidence so that they must act toward each other with the utmost good faith, and that one member of the committee acting honestly and in good faith is liable only for his own acts and is not by virtue of his position liable for the mismanagement and bad faith of others on the committee, of which conduct he had no actual knowledge at the time. Appellee cites many authorities in support of these two propositions, many of which are from volume 14 of Corpus Juris, under the title of "Corporations," and some decisions, but with most of them it appears to be a statement of the general rule, which was all that seemed necessary in that connection; but many of such statements are followed by the exception or modification as to duty of making inquiry and necessity of avoiding negligence in that respect as in 14A C. J. 107:

"A director is liable only for his own acts or omissions; he is not merely by virtue of his position liable for the mismanagement or defalcation of officers or employees unless he was negligent in failing to exercise a reasonable supervision of the affairs of the corporation or in the selection or retention in office of persons of known incompetence or dishonesty. Where there would be liability if the fraud had been practiced by directors themselves, there is like liability if the directors have been grossly negligent in permitting the fraud to be practiced by officers under their control."

Appellee also cites sections 29 and 30 under the heading of "Notice" in 46 C. J., which in conjunction with the preceding section 28 gives a very full and complete statement of the law as to being put on inquiry. These sections are as follows:

"It is a general rule that whatever puts a party on inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, and would lead to a knowledge of the facts by the exercise of ordinary intelligence and understanding. Wherever facts put a party on inquiry, notice will be imputed to him if he designedly abstains from inquiry for the purpose of avoiding notice.

"The application of this doctrine is generally the result of bad faith, fraud, or gross negligence, on the part of the party charged with notice. The doctrine is resorted to from necessity, and with reluctance, and for the purpose of finding a ground of preference between equities otherwise equal. It is resorted to for the purpose of preventing a person from doing an act that will work injury to another, and cannot be invoked to charge a person with assent to a fraud practiced upon him. He who practices bad faith ought not to be permitted to invoke the doctrine of constructive or imputed notice in aid of his wrongdoing, unless negligence on the part of the injured party has supervened. Some courts have limited the doctrine and declared that it should not be invoked in every case where the party sought to be charged with knowledge has not been careful—aside, perhaps, from cases in which from certain facts an established presumption of knowledge exists—and have confined its application rather to cases where his omission to inquire has had such a result·that it would be unconscionable, in view of his conduct, to permit him to assert that he had no knowledge. Where a party having knowledge of facts sufficient to put him on inquiry neglects to make that inquiry, and thereby suffers loss, such loss must be attributed to his own negligence, and he will not be relieved in a court of equity. But it is held that mere want of caution is not sufficient and that to impute notice of facts which one might have learned by inquiry there must have been a fraudulent turning away from a knowledge of facts, which the *res gestœ* would suggest to a prudent mind." (pp. 543-546.)

The decision in the case of *National Bank v. Drake,* 29 Kan. 311, cited by appellee, was where a bank sued its former cashier to recover the amount he had wrongfully appropriated to his own use, and the court held the doctrine of conclusive presumption of a director of a bank knowing the financial condition was for the protection of third parties and would not apply in that case.

In the case of *Circle v. Potter,* 83 Kan. 363, 111 Pac. 479, cited by appellee, it was held that the purchaser of land by having made a limited inspection of the property was not deprived of the right to rely upon the representations made to him, which he might have found to be untrue by a further inspection.

The cases of *Dangerfield v. Railway Co.,* 62 Kan. 85, 61 Pac. 405, and *Midwest Lumber Co. v. Brinkmeyer,* 125 Kan. 299, 264 Pac. 17, have most to do with the question of whether estoppel could apply, but that is not our serious question here, for surely under the facts

in this case estoppel would apply if the defendant had the necessary knowledge or notice.

In 21 C. J. 1129 the means of knowledge is mentioned as equivalent to actual knowledge in the matter of estoppel where it is said that one "should not only have been destitute of knowledge of the real facts as to the matter in controversy, but should have also been without convenient or ready means of acquiring such knowledge."

Under the head of "Contracts" in volume 13 of Corpus Juris, it is said, at page 672:

"To constitute a waiver, the acts or circumstances relied on to constitute it must have been performed or have transpired after the party against whom the waiver is urged knew, or should have known, the facts constituting the breach."

Two Kansas decisions are in point.

"As a general rule, it is essential to the application of the principle of equitable estoppel that the party claiming to have been influenced by the conduct or declarations of another to his injury was himself not only destitute of knowledge of the state of facts, but was also destitute of any convenient or available means of acquiring such knowledge." (*Debenture Co. v. Hopkins,* 63 Kan. 678, syl. ¶ 2, 66 Pac. 1015.)

"The fraud is deemed to have been discovered whenever in the exercise of reasonable diligence it might have been discovered, and in such a case reasonable diligence required an examination of the record, which would necessarily have disclosed the fraud alleged." (*Donaldson v. Jacobitz,* 67 Kan. 244, syl., 72 Pac. 846. See, also, *Black v. Black,* 64 Kan. 689, 68 Pac. 662; *Rogers v. Lindsay,* 89 Kan. 180, 131 Pac. 611.)

The same rule has been followed in other states.

"An estoppel may be created, not only when the party sought to be concluded knows the material facts he is charged with having represented or concealed, but also where he is in such position that he ought to have known them, so that knowledge will be imputed to him." (*Weinstein v. Bank,* 69 Tex. 38, syl. ¶ 4.)

This was where an agent of a merchant failed to examine the checks returned by the bank as having been paid to observe that some of them had been forged.

In a case in New York an alteration was made in a note after two parties had indorsed it. Later when the maker went into bankruptcy these parties signed a formal statement to release him upon paying a certain percentage, and the statement they signed contained a full copy of the note, including the alteration. The court held:

"The case presents all the features of an estoppel, and its effect is not dependent upon the question whether the defendants knew what the instrument contained. It was their business to know, they had every opportunity to know, the plaintiff was not responsible if they did not know, and the effect upon his rights and interests was the same whether they knew or not." (*Conable v. Smith*, 15 N. Y. Supp. 924, 926.)

In a Wisconsin case estoppel was held to apply in an action to recover back an excess amount paid in taxes to the city because the city in assessing the street-improvement tax omitted to allow a certain deduction, and it was held:

"It is suggested that there can be no waiver without intent to waive based on knowledge of the facts. True, but one is presumed to know that which in contemplation of law he ought to know, and one is presumed to waive that which is necessarily implied from his conduct. Constructive as well as actual knowledge of the facts, and implied as well as express intent, satisfy the prime essential of a conclusive waiver." (*Pabst Brewing Co. v. Milwaukee*, 126 Wis. 110, 117.)

A number of other authorities are cited as to the estoppel of one becoming a director of a corporation to later urge that it was never legally organized, but in this case the fraud alleged was committed by the organization committee in violating and disregarding a positive requirement for organization, which requirement was fully capable of being accurately determined just as well prior to the organization as now, and even better, and rests entirely upon the pleadings, the findings of the jury and the undisputed testimony, and we need not extend the question of waiver to the office the defendant held as director of the association, but will limit it to the organization committee.

The matter of estoppel or waiver in this case, as now presented, is purely a question of law and not one for a jury, as was said in 27 R. C. L. 912:

"Where, however, the facts and circumstances relating to the subject are admitted or clearly established, waiver becomes a question of law."

We are convinced that notwithstanding the fact that the defendant did not have actual knowledge or notice of the fraud by the organization committee, as found by the jury, and that he relied on the representations made by the other members of that committee and had no reason to suspect they were misrepresenting matters to him, yet being a member of that committee to which was intrusted the entire responsibility of seeing that the preorganization require-

ments were entirely met or the unused balance of the membership fee returned, imposed upon him the duty of inquiring and investigating as to the correctness of the report made by his agents, the subcommittee, and his failure to investigate a matter involving so important a trust for those hundreds of subscribers who reposed confidence in him to act for their protection, amounted to nothing short of carelessness and neglect, and even by reason of the enormity of the trust imposed, a gross neglect.

We therefore conclude that the defendant was estopped to make the defense of fraud by reason of his being a member of the organization committee that committed the fraud alleged, and that if he did not know of the fraud, it was his duty to inquire and investigate in the interest of the others whom he represented, and by so doing he could have known of the shortage of bushels, the alterations and changes then as well as now, and he is therefore estopped.

Having reached this conclusion, it would serve no good purpose in this particular case to consider the other point argued on the rehearing.

The former opinion is modified in so far as the question of estoppel is concerned.

The judgment of the trial court is reversed and the cause remanded with instructions to render judgment for the plaintiff in accordance with the views herein expressed and upon the answers of the jury to the special questions, notwithstanding the general verdict.