(561 P.2d 897)
No. 48,456

JAMES E. GOFF and JANICE SUE GOFF, *Appellants,* v. AMERICAN
SAVINGS ASSOCIATION OF KANSAS, *Appellee.*

Opinion filed March 4, 1977.

*Fred W. Phelps* and *R. W. Niederhauser,* of Fred W. Phelps, Chartered, of
Topeka, for the appellants.

*Gerald L. Goodell* and *Harold S. Youngentob,* of Goodell, Casey, Briman &
Cogswell, of Topeka, for the appellee.

ABBOTT, J.: This is an action for fraud brought by the appellants, James E. Goff and Janice Sue Goff, homeowners, against appellee, American Savings Association of Kansas, holder of the first mortgage, and Clarence H. Lyden, contractor.

The trial court granted summary judgment against the Goffs and in favor of American Savings Association, and the Goffs appealed. The action against Clarence H. Lyden is pending in the district court and Lyden is not a party to this appeal.

In the latter part of 1973, the appellants signed a construction loan agreement whereby Lyden would build a home for appellants and American Savings Association would loan money to the appellants to pay for the construction as it progressed.

On April 14, 1974, Lyden, while attempting to backfill around the basement walls, caused a wall to "bow" and crack in three places. James E. Goff was present and helped in an effort to straighten the wall. Goff observed three cracks about the size of a pen or pencil tip in the basement wall that went all the way through. Mr. Goff immediately became concerned that the basement might not be watertight and asked the contractor to guarantee the basement "not to leak." Lyden replied, "No, I can't guarantee it not to leak."

The following day, the Goffs requested Mrs. Goff's father and Lee Likes, a family friend, to inspect the basement for the sole purpose of ascertaining if it would be watertight. Lee Likes was a building contractor. Likes and Mrs. Goff's father told the Goffs that the basement would leak and it should be torn out. Likes, in particular, was very adamant, saying, ". . . it will never work"; "the cracks would not seal out water"; and, ". . . no contractor in his right mind would build a frame on top of a wall like that."

Approximately one month later, Mr. Goff talked to Benny Benge and Dale Casto, the cement contractors who were pouring the basement and garage floor, and they told Goff that the basement would never hold water.

Appellants' cause of action for fraud is based on a conversation with Delores Green, a contracting officer for American Savings Association, and a single five- to ten-minute phone conversation with Bill Light, an appraiser for American Savings Association. The conversation with Delores Green took place at the time of the signing of the construction loan agreement. The phone conversation with Bill Light took place on April 19. Appellants testified Delores Green assured them American Savings Association's inspector would see that the construction "was being handled properly and so on and so forth." Delores Green did not state American Savings Association would guarantee the workmanship. Mr. Goff testified Delores Green told them "that American Savings would have to send out an inspector quite periodically to inspect the job site, to make sure that the material and the workmanship was 100 percent satisfactory."

On April 15 or 16, 1974, Mrs. Goff called American Savings Association and requested that Bill Light inspect the basement walls. On April 19, 1974, Mrs. Goff talked to Bill Light on the phone. Taking Mrs. Goff's testimony in its most favorable con-

text, as we are required to do on a motion for summary judgment, Bill Light told Mrs. Goff she had a good contractor and not to worry about it; that the drain tile would handle the water around the basement and that the basement would not leak. Bill Light did not guarantee the basement would not leak, and he was not asked to do so.

The basement leaked and appellants filed suit. The trial court held that a lending institution may insist on the right to supervise construction and to inspect as construction proceeds in order to protect its mortgage, and in this case had protected itself by providing:

"The Owner Agrees. . . . To grant American's inspector access to the building and premises during construction to inspect said construction, and to grant American, or its agents, the right to reject and to require replacement of any materials or work that does not in American's opinion comply with the plans and specifications; provided however, American shall be under no obligation to so inspect or to accept or reject materials or work, and it is agreed that, the right granted in this paragraph shall be solely for the benefit of American."

The trial court then concluded, as a matter of law, that (1) there was no confidential relationship between the plaintiffs and American Savings Association; (2) according to the terms of their contract, the plaintiffs were not entitled to rely on American's evaluation of the quality of construction; (3) American could not have intentionally defrauded the plaintiffs without damaging their own interest in the property, something which it would not do intentionally. The trial court later added a fourth finding that "fraud cannot be predicated upon the expression of an opinion and that Mr. Light's statements relied upon by plaintiff clearly fall within that rule," and then granted summary judgment against the appellants as to their claim against American Savings Association.

Appellants rely on five points. Basically, appellants contend that the trial court erred in making the above findings as a matter of law as to four points.

The fifth point on which appellants rely is that a question remains whether the written document referred to by the court as being determinative on the question of reliance was modified by subsequent parol. Appellants concede that this issue was not raised in the trial court. We note that appellants filed a motion, or motions, after summary judgment was entered, requesting the

court to interpret or amend the journal entry of summary judgment and in the alternative for a rehearing of American Savings' motion for summary judgment. Appellants did not raise the oral modification of a written contract issue on their post judgment motion. Having failed to present the issue to the trial court, it cannot be a subject for appellate review. (*Nelson v. Hy-Grade Construction & Materials, Inc.*, 215 Kan. 631, 527 P. 2d 1059; *State v. Osbey*, 213 Kan. 564, 517 P. 2d 141.)

"A litigant may not for the first time on appeal change the theory of his case from that on which it was presented to the trial court, nor may he present matters or issues which he did not bring to the attention of that court. (*In re Bowlus*, 197 Kan. 351, 416 P. 2d 711; *Green v. Kensinger*, 193 Kan. 33, 392 P. 2d 122; *Potwin State Bank v. Ward*, 183 Kan. 475, 327 P. 2d 1091, 80 A. L. R. 2d 166.)" *Evangelist v. Bellem Research Corporation*, 199 Kan. 638, 641, 433 P. 2d 380.

Each case alleging fraud must be dealt with on its own particular set of facts and circumstances, and unless one finds an identical set of facts the case will usually be distinguishable in many particulars.

Good faith is required in every business transaction and the law will not permit a business person to intentionally or recklessly make false representations. If the business person does so, he may be called upon to respond in damages if damages are, in fact, incurred. This does not mean, however, that a business person is responsible in damages for every erroneous, reckless, or false representation made to a person, even though it may cause the other person damage. On the undisputed facts of this case, certain elements must be present in order for plaintiffs to recover on a fraud theory. If any one element is absent, then plaintiffs may not recover. The essential elements are that a representation was made as a statement of a material fact, which was untrue and known to be untrue by Bill Light at the time he made the statement, or else recklessly made, which was of such a character that the Goffs had a right to reasonably rely on it, and did rely on it to their damage. The statement must have been of such a nature that it was reasonably calculated to deceive the Goffs and to induce them to do what they otherwise would not have done. It must have been a statement of fact, which existed at the time it was made or had existed in the past, as opposed to an opinion. 37 Am. Jur. 2d, *Fraud & Deceit* § 12, pp. 33-4, *Atlas Acceptance Corp. v. Weber*, 138 Kan. 89, 23 P. 2d 479.

Many factors must be considered in determining whether a statement is a matter of fact or matter of opinion and whether or not a plaintiff has a right to rely on the statement. Among the facts the court will take into consideration are the intelligence, education, business experience and relative situation of the parties; the general information and experience of the persons involved as to the nature and use of the property; the habits and methods of those in the industry or profession involved; the opportunity for both parties to make an independent investigation as well as the nature, extent and result of any investigation so made; and any contract the parties knowingly and understandingly entered into.

With that general background, we now look to the facts of this case to ascertain whether the trial court was correct in granting summary judgment based on the pleadings, uncontroverted facts, answers to interrogatories, and depositions on file. Plaintiffs do not dispute the evidence or make claim of other favorable evidence that is not in the record. The general rules for summary judgment were recently summarized by Chief Judge Harman, then Commissioner Harman, in *Timi v. Prescott State Bank*, 220 Kan. 377, 385-6, 553 P. 2d 315, as follows:

" 'Generally before a summary [judgment] may be granted, the record before the court must show conclusively that there remains no genuine issue as to a material fact, and that the moving party is entitled to judgment as a matter of law. A mere surmise or belief on the part of the trial court, no matter how reasonable, that a party cannot prevail upon a trial will not warrant a summary judgment if there remains a dispute as to a material fact which is not clearly shown to be sham, frivolous, or so unsubstantial that it would be futile to try the case . . . The manifest purpose of a summary judgment is to obviate delay where there is no real issue of fact. A court should never attempt to determine the factual issues on a motion for summary judgment, but should search the record for the purpose of determining whether factual issues do exist. If there is a reasonable doubt as to their existence, a motion for summary judgment will not lie. . . . A court, in making its determination, must give to the party against whom summary judgment is sought the benefit of all inferences that may be drawn from the facts under consideration' (*Lawrence v. Deemy*, 204 Kan. 299, 301-302, 461 P. 2d 770). '. . . A popular formula is that summary judgment should be granted on the same kind of showing as would permit direction of a verdict were the case to be tried. . . . If there is any question as to the credibility of witnesses or the weight of evidence, a summary judgment should be denied.' (*Hastain v. Greenbaum*, 205 Kan. 475, 481, 470 P. 2d 741.)"

The existence of fraud is ordinarily a question of fact to be heard by the trier of facts. The actionable nature of a representation, however, involves a question of law. Where the facts are

undisputed and only one.reasonable conclusion can be reached, or where there is an entire failure of proof, the trial court may apply the principles of law to the facts and grant summary judgment. 37 Am. Jur. 2d, *Fraud and Deceit* § 19, p. 43.

The question also ". . . may be entirely one of law, as where it appears without dispute in the evidence that the representation was only a statement of the opinion or belief of the person making it, not to be relied upon as a statement of fact." 37 Am. Jur. 2d, *Fraud and Deceit* § 44, p. 69.

"While as a general rule the question as to whether a particular statement is one of fact or opinion is for the jury, this is not always so, for cases frequently arise which are so plainly of one class or the other that they can be disposed of by the court without the aid of the jury. Thus, a statement may be so clearly an expression merely of the opinion of the person making it, and not to be relied upon as a representation of fact, that it may be held, as a matter of law, not actionable as a false representation constituting a fraud." 37 Am. Jur. 2d, *Fraud and Deceit* § 48, pp.77-8.

James E. Goff had completed high school and some college. He was 29 years old and employed in credit and collection work for Goodyear Tire & Rubber Company. The age and educational level of Mrs. Goff are not shown. The Goffs had previously owned a home in Topeka, Kansas. When the construction loan agreement was executed, the Goffs knew, or were bound to have known, that American Savings Association's inspection was "solely for the benefit of American" and that American Savings Association was not bound to inspect or to accept or reject materials or work. It is not customary in the business of making loans to provide inspections for the benefit of the mortgagor-purchaser. It is customary for the purchasers to inspect the premises as construction progresses and to satisfy themselves as to material and workmanship prior to final closing. While this is a case of first impression in Kansas, other jurisdictions have interpreted similar loan agreements and held that the providing of periodic inspection was normal procedure for a lending institution and would not impose liability. *Bradler v. Craig,* 274 Cal. App. 2d 466, 79 Cal. Rptr. 401 (1969); *Schenectady Savings Bank v. Bartosik,* 353 N.Y.S. 2d 706, 77 Misc. 2d 837 (1974); *Callaizakis v. Astor Development Co.,* 4 Ill. App. 3d 163, 280 N.E. 2d 512 (1972).

It is not necessary, however, for us to decide whether a confidential relationship did or did not exist. Assuming arguendo that the specific contract provision did not bar recovery and that

the statements of Bill Light (which he denied), taken in a light most favorable to plaintiffs, were reckless statements, and assuming still further that a confidential relationship did exist, the plaintiffs still could not recover.

First, fraud cannot be predicated upon what as a matter of law amounts to an expression of an opinion and which cannot reasonably be understood to be anything else.

Second, Light obviously was attempting to predict some future event, *i.e.*, would the basement be waterproof in the future. The basement was not leaking at the time and, in fact, did not leak for nearly two months thereafter. Light merely expressed an opinion and confidence in the contractor. Plaintiffs picked the contractor and, other than the basement wall, were happy with his work. A number of authorities and cases are available to anyone interested. See: *Timi v. Prescott State Bank*, supra; *Finch v. McKee*, 18 Cal. App. 2d 90, 62 P. 2d 1380 (1936); *Railway Co. v. Bennett*, 63 Kan. 781, 66 Pac. 1018 (1901); 37 Am. Jur. 2d, *Fraud and Deceit* § 45; 37 C.J.S., *Fraud* § 10a.

Plaintiffs could not reasonably rely on Light's statement in view of the facts of this case. Plaintiffs had actual knowledge of the cracks in the basement wall. Plaintiffs knew that prior to jacking the wall back in place the cracks went all the way through the basement wall and were as wide as a pencil or ball-point pen point. They also knew the basement wall did not return to its original position. Plaintiffs had requested the contractor to guarantee the basement to be watertight and the contractor refused. That, in itself, should have put any reasonable person on notice that the basement wall might leak. When coupled with plaintiffs' own observation of the size of the cracks all the way through the wall, it is devastating to plaintiffs' case. But, there is more. Plaintiffs also made an investigation on their own. The investigation was unhampered by American Savings Association. The investigation certainly disclosed to plaintiffs that Light's opinion was just that, an opinion, and a controversial one at that. Plaintiffs requested Mrs. Goff's father and Lee Likes, a family friend, to inspect the premises, and they did so. The family friend was a building contractor. Both, Mrs. Goff's father and Lee Likes, told the Goffs the basement would leak. Likes suggested that fact in rather harsh language. Still later, two cement contractors who were pouring the basement and garage floors informed Goffs the basement would never hold water out.

"Restatement (Second), Torts § 540, p. 10 (Tent. Draft No. 11, 1965) sets forth very clearly one of plaintiff's problems in this case: "A recipient of a fraudulent misrepresentation is justified in relying upon its truth without investigation, unless he knows or has reason to know of facts which make his reliance unreasonable." The comments to § 540, at p. 12, go on to point out that the question is not one of contributory negligence, which is not a defense to fraud. Rather, the test is whether the recipient has "information which would serve as a danger signal and a red light to any normal person of his intelligence and experience." See also *Reeder v. Guaranteed Food, Inc.,* 194 Kan. 386, 399 P. 2d 822; *Jenkins v. McCormick,* 184 Kan. 842, 339 P. 2d 8; *Kansas Wheat Growers Ass'n v. Windhorst,* 131 Kan. 423, 292 Pac. 777; *Harvester Co. v. Hardward Co.,* 101 Kan. 488, 167 Pac. 1057; *Disney v. Lang,* 90 Kan. 309, 133 Pac. 572; *Graffenstein v. Epstein & Co.,* 23 Kan. 443 [2d 314] (1880); Ahrens, *Some Observations on the Law of Misrepresentation in Kansas* , 9 Wash. L.J. 315, 333 (1970); 37 Am. Jur. 2d, *Fraud and Deceit* § 256, p. 343; 37 C.J.S., *Fraud* § 34a.

Considering all the facts of this case, no reasonable person in the Goffs' position and circumstances could have reasonably relied on the statements of Bill Light, and the trial court was correct in granting summary judgment as a matter of law.

The trial court's finding, "American could not have intentionally defrauded the plaintiff without damaging their own interest in the property, something it would not do intentionally," is immaterial to our decision. Whether or not American Savings Association would benefit or conversely be damaged is immaterial, as the plaintiff is neither required to plead nor prove that the defrauder benefits from or has an interest in the transaction. 37 Am. Jur. 2d, *Fraud and Deceit* § 18, p. 43; *Hewey v. Fouts,* 92 Kan. 268, 140 Pac. 894. Whether or not American Savings Association would benefit or be damaged by its alleged fraudulent statements was germane, and the trial court was correct in considering the manner in which American Savings Association would benefit or be damaged as one element the court could consider in deciding if American Savings was expressing an opinion or a fact and as to whether or not fraud was committed.

All of the facts necessary for determination of the controlling

questions of law in this case are in the record, and the trial court was correct in sustaining American Savings Assocation's motion for summary judgment.

Affirmed.