Cornelius CLARK, Jr. and Author Lee Clark, Plaintiffs–Appellants,

v.

KANSAS SAVINGS & LOAN ASSOCIATION (now known as Century Savings Association of Kansas), Defendant–Respondent.

No. WD 31230.

Missouri Court of Appeals, Western District.

Nov. 3, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 2, 1980.

Application to Transfer Denied Jan. 13, 1981.

Lillie Knight, Kansas City, for plaintiffs–appellants.

Arthur H. Stoup, Stoup & Bohm, Kansas City, for defendant–respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

TURNAGE, Presiding Judge.

Cornelius Clark and is wife brought suit against Kansas Savings and Loan Association and Award Homes, Inc. for damages resulting from the construction of a home. The Clarks dismissed as to Award Homes prior to trial and proceeded against Kansas Savings and Loan. At the conclusion of the Clark's evidence, the court directed a verdict in favor of Kansas S. & L.

On this appeal the Clarks contend their evidence showed Kansas S. & L. violated a fiduciary duty when it failed to inspect the house during construction resulting in two bedrooms being constructed smaller than the plans required; that the evidence showed Kansas S. & L. was the agent for Clark and failed in its duty to discover the undersize of the bedrooms. Affirmed.

The Clark's petition alleged in Count I that Kansas S. & L. agreed in consideration of the Clarks obtaining a construction loan from it, to act as the Clarks' agent to inspect the construction of the home to insure the house conformed with the plans. In Count II, Clark pleaded that by reason of obtaining a construction loan from Kansas S. & L., a fiduciary relationship of principal and agent arose between the parties and that Kansas S. & L. was obligated to supervise and inspect the construction of the home to insure that it complied with the plans before it paid out any loan proceeds for construction costs.

The Clarks' evidence revealed that they owned a lot and contacted Award Homes concerning the construction of a home on their lot. Award Homes caused plans to be drawn for the Clarks and the Clarks signed the front page to indicate their approval. After the plans were approved, the Clarks went to Kansas S. & L. and talked with Mrs. Lawrence about a construction loan. The Clarks testified that Mrs. Lawrence told them Kansas S. & L. was experienced in making construction loans and that they would inspect the house from time to time and that no money would be paid out until the construction was done according to the plans. Clark and his wife executed a note and deed of trust to Kansas S. & L. and construction was begun. It was agreed that Clark would sign all vouchers submitted by Award Homes for payments at the three intervals of construction when payments were to be made. Clark did some part–time construction work and was to do a certain amount of work on this house. The final payment to Award Homes was to

be made when the rafters were put up. Before the final payment was made, Clark stated that he had seen the inspectors from Kansas S. & L. at the home inspecting and measuring.

The Clarks signed all of the vouchers for Award Homes to be paid the full amount due them by Kansas S. & L. Although it is not clear from the record, a fair inference from the evidence is that after Clark had approved the final payment to Award Homes, Clark was installing the top flooring in two bedrooms intended for use by the two Clark boys. The Clarks had desired these bedrooms to be 12 × 11½ feet, and the plans showed this dimension. However, when Clark started to lay the top flooring, he discovered the material he had would not fit, and in measuring both bedrooms, found they were only 12 × 10 feet.

The Clarks consulted an engineer and he examined the plans and discovered that even though the plans showed the bedroom dimensions to be 12 × 11½ feet, the overall dimension of the outside of the home was only 26 feet wide when it was required to be 27 feet to accommodate the 11½ foot width of the bedrooms. This meant, of course, the plans contained a conflict with the overall width as shown not being sufficient to accommodate the width of the rooms shown. The Clarks predicate their claim for damages on the fact the bedrooms were 10 feet wide instead of 11½ feet as they had desired.

The Clarks did not testify to any participation by Kansas S. & L. in the preparation or approval of the plans or the construction of the house. The only evidence upon which Clark now seeks to base a recovery against Kansas S. & L. is his testimony that Mrs. Lawrence said that Kansas would inspect the house and not pay out until the house was constructed according to the plans. On cross examination Clark admitted that he knew the purpose of the inspection Kansas S. & L. was to make was for the protection of Kansas S. & L. In short, Clark conceded that he knew the inspections were being made to insure that the money Kansas S. & L. paid out on the construction loan went into the actual construction of a home so that Kansas S. & L.'s security would be, in fact, on a home constructed on the lot.

█ In reviewing the action of the trial court in sustaining a motion for a directed verdict at the close of the plaintiff's evidence, the plaintiff is entitled to the most favorable view of the facts and the inferences to be drawn therefrom. *Duke v. Missouri Pacific Railroad Company*, 303 S.W.2d 613, 616[1] (Mo.1957). The trial court stated it was deciding this case under Kansas law because Kansas S. & L. is located in Kansas, the loan documents were executed in Kansas, and the payments were to be made in Kansas. That view is not attacked on this appeal and this court will likewise apply Kansas law.

*Goff v. American Sav. Ass'n of Kansas*, 1 Kan.App.2d 75, 561 P.2d 897 (1977) involved a similar factual situation. In *Goff* the court stated 561 P.2d at 902[7, 8]:

When the construction loan agreement was executed, the Goff's knew, or were bound to have known, that American Savings Association's inspection was "solely for the benefit of American" and that American Savings Association was not bound to inspect or to accept or reject materials or work. It is not customary in the business of making loans to provide inspections for the benefit of the mortgagor–purchaser. It is customary for the purchasers to inspect the premises as construction progresses and to satisfy themselves as to material and workmanship prior to final closing.

In *Schenectady Savings Bank v. Bartosik*, 77 Misc.2d 837, 353 N.Y.S.2d 706, 708[2] (1974) the court discussed the general rule as stated in *Bradler v. Craig*, 274 Cal. App.2d 466, 79 Cal.Rptr. 401 (1969) as follows:

[W]here the lending institution's participation was that of the usual and ordinary construction and purchase money lender, content to lend money on the security of real property, no liability would attach. The Court further held that approval of plans and specifications and periodic in-

spection of houses during construction is normal procedure for any construction money lender.

The court in *Goff* cited with approval *Schenectady, Bradler* and *Callaizakis v. Astor Development Company,* 4 Ill.App.3d 163, 280 N.E.2d 512 (1972) for the same proposition that the providing of periodic inspection is a normal procedure for a lending institution and does not impose liability.

Given the general rule adopted in Kansas that the making of periodic inspections on construction projects in which a savings and loan institution is making a construction loan without further involvement in the project constitutes a normal procedure and does not impose liability upon that institution, the facts adduced by the Clarks did not make a submissible case. Clark admitted that he knew the statement made by Mrs. Lawrence that Kansas S. & L. would inspect the home and would not make any payouts until satisfied the construction was according to the plans meant that such inspections were for the protection of Kansas S. & L., not for Clark. In addition, Clark had full access to the plans and full opportunity to examine them before he signed his approval thereon. These plans revealed that the size of the rooms would not fit within the overall width. Further, Clark was on the construction site frequently and had full opportunity to inspect and measure the house as it was being constructed to make sure the rooms were of the desired size. Perhaps most significantly, Clark neither pleaded nor proved that Kansas S. & L. at any time made any representation to him that the house was constructed according to the plans. Clark neither alleged nor proved that Kansas S. & L.'s participation was other than that of the usual and ordinary construction cost lender content to lend money on the security of real property. Clark's only claim of liability is the alleged breach of Kansas S. & L.'s promise to inspect the house. Under the view adopted in Kansas, this inspection, as conceded by Clark, was for the benefit of Kansas and no liability would attach to it by reason of its undertaking the inspection of the house during construction.

Viewing Clark's evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Clarks reveals that the Clarks failed to make a submissible case. The judgment is affirmed.

All concur.