(627 P.2d 825)

No. 51,391

ELFRIEDA A. SCANTLIN, *Appellant,* v. SUPERIOR HOMES, INC., MANNING REAL ESTATE, and PEOPLES SAVINGS & LOAN ASSOCIATION OF STERLING, KANSAS, *Appellees.*

Opinion filed May 1, 1981.

*Robert L. Feldt,* of Great Bend, for appellant.

*Richard W. Brown,* of Brown & Brown, of Great Bend, for appellee Superior Homes, Inc.

*Larry E. Keenan,* of Great Bend, for appellees Manning Real Estate and Peoples Savings & Loan Association of Sterling, Kansas.

Before JUSTICE HOLMES, presiding, MEYER, J., and HARRY G. MILLER, District Judge Retired, assigned.

MEYER, J.: This is an action for breach of warranty, misrepresentation and breach of contract for the purchase of a new home.

Elfrieda A. Scantlin (appellant) entered into a contract for the purchase of a house under construction by appellee Superior Homes, Inc. (Superior). The realtor was appellee Manning Real Estate (Manning). Appellee Peoples Savings & Loan Association of Sterling, Kansas (Peoples), financed the construction loan for the builder and also financed appellant's purchase loan. Appellant testified in a deposition that she was told by Manning's agents and also Peoples that Superior was a good builder and built excellent quality homes. The base price of the home was $63,900, but the contract price was $66,393 due to several changes in the house made during construction at the request of appellant to suit her tastes.

Prior to closing, appellant discovered certain things wrong with the building and thus did not close on January 15, 1978, when the contract for purchase specified. Superior sued appellant for specific performance. However, the suit was dismissed in consideration of an agreement to place $1,000 of the purchase price in escrow pending completion of a specified list of defects needed to be corrected by Superior. Closing occurred on March 2, 1978. The agreed price paid at closing was $70,674.57. The closing price included costs incurred for failure to close on January 15, 1978, and also additional changes added at the request of appellant.

After closing, appellant discovered that items listed were either not taken care of by the builder, or were not taken care of satisfactorily. Further, additional defects not listed at closing became known to appellant.

Appellant filed suit against Superior, Peoples and Manning. At the pretrial, the court (1) denied appellant's request for jury trial; (2) granted Peoples' and Manning's motions for summary judgment; (3) ruled the action did not involve breach of warranty; and (4) ruled the lawsuit was limited to the contract entered into at closing on March 2, 1978, holding an accord and satisfaction was a defense and thus limiting appellant's evidence to breaches of that contract. Objections to the pretrial order were promptly filed.

The matter was tried to the court wherein rulings from the pretrial were adopted. The court awarded appellant $750.00 plus

¾ of the interest, and Superior was allowed to keep $250.00 plus ¼ of the interest, thus disposing of the $1,000 in escrow.

Appellant brings this appeal.

Appellant contends the court erred in refusing her request for a jury trial.

Superior argued in its brief that the appellant waived jury trial because there was no demand for jury trial in the petition, nor was a separate demand filed. The appellant requested jury trial orally at the pretrial conference.

K.S.A. 60-238 provides that any party may demand jury trial by serving on other parties a demand in writing at any time within 10 days of service of the last pleading. The last pleading was filed September 14, 1978, and the pretrial conference was April 30, 1979. Hence, the "demand" for jury trial was not timely made nor was it in writing.

"In the absence of a timely demand for a jury trial, a party waives the right to a trial by jury." *Horton v. Montgomery Ward,* 199 Kan. 245, 247, 428 P.2d 774 (1967); *Mansfield Painting & Decorating, Inc. v. Budlaw Services, Inc.,* 3 Kan. App. 2d 77, 589 P.2d 643, *rev. denied* 225 Kan. 844 (1979).

Under K.S.A. 60-238, a waiver may be set aside by the judge in the interest of justice or when the waiver inadvertently results without serious negligence of the party. In addition, the court in its discretion may order a trial by jury of any or all issues. K.S.A. 60-239(*b*).

We conclude there was no abuse of discretion in failing to set aside the waiver or in failing to order a trial by jury on its own motion.

Appellant contends the court erred in granting summary judgment for Manning Real Estate and Peoples Savings & Loan Association at the pretrial conference.

In *Dugan v. First Nat'l Bank in Wichita,* 227 Kan. 201, Syl. ¶ ¶ 1, 2, 606 P.2d 1009 (1980), the court said:

"Summary judgment is proper only if there are no genuine issues of material fact.

"A trial court, in ruling on motions for summary judgment, should search the record to determine whether issues of material fact do exist."

Furthermore,

"An appellate court in examining the validity of a motion for summary judgment should read the record in the light most favorable to the party who defended against the motion. It should accept such party's allegations as true, and it should give him the benefit of the doubt when his assertions conflict with those of the

movant." *Collier v. Operating Engineers Local Union No. 101,* 228 Kan. 52, Syl. ¶ 2, 612 P.2d 150 (1980).

Appellant's main argument is that Manning and Peoples should not have been dismissed since the motions for summary judgment were not in compliance with Supreme Court Rule No. 141 (225 Kan. lxviii) which states:

"No motion for summary judgment shall be heard or deemed finally submitted for decision until:

"(a) The moving party has filed with the court and served on opposing counsel a memorandum or brief setting forth concisely in separately numbered paragraphs the uncontroverted contentions of fact relied upon by said movant (with precise references to pages, lines and/or paragraphs of transcripts, depositions, interrogatories, admissions, affidavits, exhibits, or other supporting documents contained in the court file and otherwise included in the record); and

"(b) Any party opposing said motion has filed and served on the moving party within twenty-one (21) days thereafter, unless the time is extended by court order, a memorandum or brief setting forth in separately numbered paragraphs (corresponding to the numbered paragraphs of movant's memorandum or brief) a statement whether each factual contention of movant is controverted, and if controverted, a concise summary of conflicting testimony or evidence, and any additional genuine issues of material fact which preclude summary judgment (with precise references as required in paragraph [a], *supra*).

"*Provided, however,* That said motion may be deemed submitted by order of the court upon expiration of twenty-one (21) days, or expiration of the court-ordered extended period, after filing and service on opposing counsel of the brief or memorandum of moving party notwithstanding the failure of the opposing party to comply with paragraph (b), *supra.* In such case the opposing party shall be deemed to have admitted the uncontroverted contentions of fact set forth in the memorandum or brief of moving party."

In *Hall v. Twin Caney Watershed Joint Dist. No. 34,* 4 Kan. App. 2d 202, 604 P.2d 63 (1979), the court of appeals ruled on the propriety of granting a motion for summary judgment at pretrial conference when no motion or statement of uncontroverted facts had been filed prior to the judgment as required by Supreme Court Rule No. 141. The court of appeals held that even though there was no formal compliance with the rule, all of the requisites for summary judgment were met by the pretrial conference. In *Hall,* no objection was made as to the procedure followed and both parties had submitted briefs to the court.

In the case at bar, there was no objection made as to failure to comply with Supreme Court Rule No. 141. We conclude the failure to comply with Supreme Court Rule No. 141 did not bar the relief requested.

In addition, there is no merit to appellant's contention that an issue of material fact exists. Appellant, in her deposition, states that her basis for the allegation of fraudulent misrepresentations was that Manning's agent and Peoples' agent stated that the builder was a good builder and built excellent quality homes. This type of representation has been found to be insufficient to constitute fraudulent representation as a matter of law in *Nordstrom v. Miller,* 227 Kan. 59, 605 P.2d 545 (1980), and in *Goff v. American Savings Association,* 1 Kan. App. 2d 75, 561 P.2d 897 (1977).

In *Nordstrom v. Miller,* summary judgment was held to be proper for a real estate agent who represented that certain wells were good and would last a long time. It was therein stated: "[I]n order for an agent to be liable for fraud there must be a fraudulent intent to deceive." 227 Kan. at 63.

While *Nordstrom* involved an agent who merely repeated what the seller told him, and the present case involved independent knowledge on the part of the agent that Superior built good homes, there is no evidence that the statement was made in reckless disregard of the truth. Even appellant admits that the other houses that she inspected which were constructed by the same builder were of good quality.

In *Goff v. American Savings Association,* 1 Kan. App. 2d 75, summary judgment was held to be proper in favor of the financer of the construction loan. The agent of American Savings told plaintiff she had a good contractor and that the basement would not leak.

It was therein stated:

"The existence of fraud is ordinarily a question of fact to be heard by the trier of facts. The actionable nature of a representation, however, involves a question of law. Where the facts are undisputed and only one reasonable conclusion can be reached, or where there is an entire failure of proof, the trial court may apply the principles of law to the facts and grant summary judgment." 1 Kan. App. 2d at 79-80.

"[F]raud cannot be predicated upon what as a matter of law amounts to an expression of an opinion and which cannot reasonably be understood to be anything else." 1 Kan. App. 2d at 81.

Taking appellant's statements in her deposition as true and construing the evidence most favorably to appellant, it can be ruled that the representations alleged here were merely expressions of opinion and were not made with intent to deceive or with

a reckless disregard of the truth. We find no error in the trial court's order granting summary judgment in favor of Manning and Peoples.

Appellant further contends the court erred in ruling appellant could not proceed against Superior on the theory of breach of implied warranty.

Kansas has recognized an implied warranty of fitness in the sale of new housing, at least when the seller built the house. *Miles v. Love*, 1 Kan. App. 2d 630, 633, 573 P.2d 622, *rev. denied* 225 Kan. 845 (1977); *McFeeters v. Renollet*, 210 Kan. 158, 165, 500 P.2d 47 (1972).

"Where a person contracts to perform work or to render a service, without an express warranty, the law implies an undertaking or contract on his part to do the job in a workmanlike manner and to exercise reasonable care in performing the work or service. (Following *Crabb v. Swindler, Administratrix*, 184 Kan. 501, 337 P.2d 986.)" *Gilley v. Farmer*, 207 Kan. 536, Syl. ¶ 3, 485 P.2d 1284 (1971), *cited in McFeeters v. Renollet*, 210 Kan. at 163.

The trial court ruled that the action for breach of implied warranty was no longer viable because such claim was settled as part of the accord and satisfaction. Whether it was error to rule that it was part of the accord and satisfaction is discussed below.

Appellant's final contention is that the court erred in limiting appellant's proof to items within the accord and satisfaction and adopting the ruling of the pretrial conference judge that there had been an accord and satisfaction as a matter of law.

The appellant was not allowed to produce evidence to prove prior existing latent defects in the home which were not discovered at the time the agreement of March 2, 1978, was reached. The court ruled at the pretrial conference that there was an accord and satisfaction as a matter of law with regard to all of appellant's claims about the home.

"An accord is a contract between creditor and debtor for the settlement of the claim by some performance other than that which is due. Satisfaction takes place when the accord is performed." *Thompson v. Meyers*, 211 Kan. 26, 32, 505 P.2d 680 (1973), citing from *Lighthouse for the Blind v. Miller*, 149 Kan. 165, 86 P.2d 508 (1939).

"To constitute an accord and satisfaction, there must be an offer in full satisfaction of the obligation accompanied by acts, declarations or such circumstances that the party to whom the offer is made is bound to understand that if he accepts it is in full satisfaction of and discharges the original obligation." *Gray v. Amoco Production Company*, 1 Kan. App. 2d 338, Syl. ¶ 10, 564 P.2d 579 (1977), *aff'd in part, rev'd in part*, 223 Kan. 441, 573 P.2d 1080 (1978).

"To have an accord and satisfaction there must be a complete meeting of the minds that the claim of the párty has been fully satisfied and discharged." *Sanders v. Birmingham,* 214 Kan. 769, 774, 522 P.2d 959 (1974).

While it is clear that the $1,000 held in escrow was there to settle the claims for the defects listed at the time of the closing, it is not clear that the intent was to settle all possible claims for breach of implied warranty based on defects not then known or discoverable with reasonable diligence.

In *Gray v. Amoco Production Company,* the issue was whether acceptance of a payout of suspended royalties by royalty owners barred a later claim for interest. The payout did not contain any indication whether or not interest was included. The court held that it was unable to find as a matter of law that there was a meeting of the minds that the claims were fully satisfied and discharged.

"[W]here . . . it appears an issue of fact exists as to what the payment and the accord and satisfaction actually covered, that question is to be determined by the trier of fact on the basis of whether there has been a meeting of the minds of the parties and the unity of purpose and intention as to the extent of the settlement." *Barton v. Welker,* 185 Kan. 294, 299, 341 P.2d 1037 (1959).

In order to affirm the trial court, this court would have to hold that the circumstances conclusively proved an intent to settle all possible claims for defects in the house. This we cannot do.

Appellant also claims that the agreement was an executory accord.

In *Coffeyville State Bank v. Lembeck,* 227 Kan. 857, 859-60, 610 P.2d 616 (1980), the issue was whether a particular settlement agreement was an executory accord or a novation. The court cited *Elliott v. Whitney,* 215 Kan. 256, 259-60, 524 P.2d 699 (1974):

" 'Novation may be broadly defined as a substitution of a new contract or obligation for an old one which is thereby extinguished [citation omitted]. It is a new contractual relation which has four requisites: A previous valid obligation, the parties must agree to the new contract, the new contract must be valid and the old obligation must be extinguished by the substitution for it of the new one [citations omitted].

" 'An executory accord has been defined in the following manner:

"The term 'accord executory' is and always has been used to mean an agreement for the future discharge of an existing claim by a substituted performance. In order for an agreement to fall within this definition, it is the promised performance that is to discharge the existing claim, and not the promise to render such performance." [Citation omitted.]

" 'The distinction between a novation and an executory accord becomes signif-

icant in event of breach of the new agreement. If the new agreement constitutes a novation, a breach does not revive the discharged claim and the parties' rights are controlled by the new agreement [citation omitted].

" 'On the other hand the effect of a breach of an executory accord is stated in the following:

"Since an accord executory operates at best no more than as a suspension of the antecedent claim, a material breach of the accord by the debtor lifts the suspension and makes the creditor's prior claim again enforceable." (6 Corbin on Contracts, § 1275, p. 111.)

" 'The eminent author just cited pinpoints the problem at hand in this fashion:

"It is frequently difficult to determine whether a new agreement is a substituted contract operating as an immediate discharge, or is an accord executory the performance of which it is agreed shall operate as a future discharge. It is wholly a question of intention, to be determined by the usual processes of interpretation, implication, and construction." [Citation omitted.]' "

Appellant asserts the agreement was an executory accord and that the breach in performance of the accord made the original claim enforceable. The trial court awarded appellant $750.00 so it appears that there was a breach of the accord, in that the repairs performed were either not done or were not satisfactory.

We conclude this cannot be termed an executory accord because the $1,000 in escrow appears to be the liquidated damages in the event no repairs were performed. It was not the repairs that extinguished appellant's claims of defects but the promise to take $1,000 off the purchase price. The failure to make repairs would not make the claim for the listed defects again enforceable.

We conclude that the agreement between the parties constituted an accord and satisfaction only as to such defects which were known, or should have been known, at the time said agreement was reached. We cannot say that such agreement extended to all conceivable rights the appellant has herein. Hence, we conclude that the agreement constituted a settlement as to all defects listed by appellant, as well as to all defects reasonably discoverable by appellant at the time of such settlement agreement. We conclude that the judgment of the trial court must be reversed and that this case be remanded to the trial court. That court is instructed to afford appellant the opportunity to prove any damages she suffered which were unknown to her and which were not discoverable by her with reasonable diligence at the time of settlement.

Reversed and remanded with instructions.